## ARMSTRONG'S EX'R *vs.* ARMSTRONG'S HEIRS.

[APPLICATION FOR PROBATE OF WILL.]

1. *Statute of wills (Code, § 1611) construed by English decisions on 29th Car. II.*—Section 1611 of the Code, so far as it relates to the signing of the will, being a substantial transcript of the statute 29th Car. II, ch. 3, the construction which the British statute had previously received must be regarded as the construction which the legislature intended to be put upon our statute, and that construction is hereby adopted.

2. *Demurrer to evidence.*—It is the duty of the court, on a demurrer to evidence, to decide against the party demurring, if the jury might have legally found against him on the evidence.

3. *What is sufficient signing of will.*—It being shown that a will was written in the presence of the testator, and at his dictation, and was subscribed by the attesting witnesses as the statute directs, after having been read and approved by him ; and that the testator, on being asked if he was able to sign it, replied, that he was not, and that it was a good will,—*held*, on demurrer to the evidence, that the testator's name written in the beginning of the will was a sufficient compliance with the requisitions of the statute.—Code, § 1611.

APPEAL from the Court of Probate of Lawrence.

In the matter of the last will and testament of James Armstrong, deceased, which was propounded for probate by his widow, Lucy Armstrong, and was in these words :

"In the name of God, amen. I, James Armstrong, being weak in body, but sound in mind, make this my last will and testament, viz : I give and bequeath to my wife Lucy all my property, both real and personal ; and it is my wish that she shall live with my mother. I take it for granted she will take care of the children.

"We sign this, at his request, in his presence, this the 11th day of September, 1855.

      R. M. ALLEN,
      THOMAS HAZLEWOOD."

The probate of the will was contested by the guardian *ad litem* of the infant children of the deceased, who pleaded, "that said will was not signed by said testator, nor by any

one else in his presence, or under his direction, as required by the Code of Alabama"; and upon this plea issue was joined. The two subscribing witnesses to the will were introduced as witnesses by the proponent, and testified as follows : "That James Armstrong was, on the 11th Sept., 1855, a citizen of Lawrence county in this State, and was over the age of twenty-one years ; that while he was in full possession of his right reason, mind and memory, he called on John H. Massie to write his will ; that Armstrong dictated the will, and Massie wrote it down as dictated by him ; that Armstrong took the will after it was written, read it over, and said that it was right ; that Armstrong then called on the witnesses, Allen and Hazlewood, both being present, to witness the will for him ; that Armstrong requested the witnesses to go to the corner of the bed, near the foot, on which he was lying sick, so that he could see them write their names, and they went to the bed as requested ; that Armstrong made his servant hold him up, so that he could and did see them sign their names to the will, which they did, as subscribing witnesses ; that Armstrong then made his servant lay him back on his pillow ; that Massie, who wrote the will, then asked him if he could not sign the will, and Armstrong replied, that he was not able, and that it was a good will, and called on the witnesses to take notice that it was his will ; that Armstrong died about half an hour, or an hour, afterwards, being taken suddenly worse while sitting up to see the witnesses sign the will.    John H. Massie, Armstrong's physician, was then introduced as a witness by Mrs. Armstrong, and testified, that at the time he was called on to write the will of Armstrong, and until after Armstrong had read and approved it as being just as he had dictated, and until after the subscribing witnesses had signed it, (which was done in the presence, and at the request of Armstrong,) Armstrong was as sound in mind as he ever saw him, and he had known him intimately for a long time ; that the will produced in court was the identical will which he then wrote for and at the request of Armstrong, and which was signed by said Allen and Hazlewood as subscribing witnesses, in the presence, and at the request of Armstrong ; and that said will was written by him just as dictated by Armstrong.    Dr. Massie further stated, that after

he had written the will, and had read it to Armstrong, he asked him if he was able to sign the same ; and that Armstrong's reply was, that it needed no signature—that it was as good a will as any man wanted."

This being all the evidence, a demurrer to it was interposed by the contestant, and sustained by the court ; and the judgment on the demurrer is now assigned as error.

W. C. GRAHAM, for the appellant.

RICE, C. J.—By our statute law, every person over the age of eighteen years, of sound mind, may by his last will dispose of all of his personal property ; and every person of the age of twenty-one years, of sound mind, may by his last will devise his lands, or any descendible interest he may have therein.—Code, §§ 1589, 1595.

Except in certain cases, of which the present is not one, the formalities requisite to a will, under section 1611 of the Code, are, 1st, that it be in writing ; 2d, that it be signed by the testator, " *or by some person in his presence, and by his direction ;* 3d, that it be attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator.

In the case at bar, it appears clearly from the evidence, that the first and third of these requisites have been complied with ; and the question is, whether the second of them has been complied with.

Section 1611 of the Code, so far as it relates to the second requisite, is a substantial transcript of that part of the 5th section of 29th Car. II, ch. 3, which related to *the signing* of the will ; and therefore, the construction which had been put upon that part of the British statute, and settled as its true construction, by the British decisions before the adoption of our statute, ought to be regarded as the construction which our legislature intended to be put upon that part of our statute now under consideration. We shall adopt and follow that construction.

According to those decisions, if the testator with his own pen writes his own name in the beginning of the will, thus, " I, James Armstrong," with the design of giving it authority,

and acknowledges it to be his writing when he calls the subscribing witnesses to attest it; and if, at the time of acknowledgment, he does not intend to subscribe it, the signing is sufficient, under the statute, without any subscription of his name at the bottom.—Lemayne v. Stanley, 3 Lev. 1; Morison v. Turnour, 18 Vesey, 176; Ellis v. Smith, 1 *ib.* 11; Grayson v. Atkinson, 2 *ib.* 454; Stonehouse v. Evelyn, 3 P. Wms. Rep. 254; Miles' Will, 4 Dana's Rep. 1; Jarman on Wills, 70.

It is not essential that the testator should write his own name. The British statute, as well as our own, allows a will to be signed for him by another; and his name, when written by another, for him, in his presence, and by his direction, will have the same effect as if it had been written by himself. Although his name is not written by himself, nor subscribed to the will; yet, if it be written in the beginning of the will by another, in his presence, and under his direction; and if it be acknowledged by him to the attesting witnesses, at the time he calls on them to attest and subscribe it, it will be as effectual as if with his own pen he had written it.—See the authorities cited *supra*; and Martin v. Wotton, 1 Lee, 130; In the goods of Clark, 2 Curteis, 329; Addy v. Grix, 8 Vesey, 505; 10 Bacon's Abr. (edition of 1846,) 490–503.

As the party who opposed the probate of the will in this case, interposed a demurrer to the evidence, and there was a joinder therein, it was the duty of the court to have decided against him, if the jury from that evidence could legally have found against him. We do not say, that from the evidence the jury would have been bound to find against him; but we think they might legally have done so. Athough it may not be a *necessary* inference from the evidence, that the name of the testator was written by Doctor Massie in his presence, and by his direction; yet it is an inference which the jury might legally have drawn.—Spencer, adm'r of Donaldson, v. Rogers, adm'r of Waters, at this term; Shaw v. White, 28 Ala. 637.

The court below erred in sustaining the demurrer to the evidence; its judgment is therefore reversed, and the cause remanded.