MARY LOU ARMSTRONG *v.* H. A. WALTON, *et al.*

[62 South. 173.]

1. INSURANCE. *Designation of beneficiary. Wills. Execution. Signing by another. Place of signing. Code 1906, section 5078.*

The right of a member of a benefit society in the amount agreed to be paid in the certificate at his death, is simply the power to appoint a beneficiary and the rules and regulations of such society, such as may be contained in the constitution or charter and by laws, are the foundation and source of such power.

2. SAME.

Where such is the plan of the association the designation of a beneficiary may be made by will.

3. WILLS. *Execution. Place of signing. Code 1906, section 5078.*

Under section 5078, Code 1906, providing that a will must be signed by the testator or some person in his presence and by

105 Miss. 22

his express direction, and if the will is not wholly written and subscribed by the testator, then it shall be attested by two or more credible witnesses, etc., the signature of the testator need not be at the end of the will but may be at the beginning.

4. SAME.

   Nor need such signature be by the testator but may be by some other person in his presence and by his express direction.

5. SAME.

   Where a testator being unable to write requested another to write his will in his presence which was accordingly done the testator's name nowhere appearing except at the beginning of the will and the same being properly attested and handed back to the testator, all parties understanding it to be a completed instrument, held that this was a sufficient signing by the testator.

APPEAL from the chancery court of Monroe county.
HON. J. Q. ROBINS, Chancellor.
Suit by Harriet Armstrong Walton and others against Mary Lou Armstrong. From a judgment for plaintiffs, defendant appeals.
The facts are fully stated in the opinion of the court.

*Paine & Paine,* for appellant.

We contend that the will on the back of the certificate is such a will as entitled it to probation under the laws of this state. The court has this original will here for inspection and we respectfully request the court to examine the same. Your Honors will see that the will is complete and regular in every respect with the exception that the deceased's name is signed at the beginning of the will and not at the end of said will. The certificate of the witnesses is in accord with the requirements of our law. The court will further observe from an inspection of this will that in the beginning of the will there is a blank space as follows, "I————," etc. It was in this blank space that the name of John Armstrong was signed by one of the attesting witnesses. The testimony

shows that the deceased John Armstrong was unable to read or write. The testimony further shows that the signature was placed in the blank space in the beginning of the will by one of the witnesses who thought it was the correct·place to sign deceased's name. The testimony further shows that the testator came to the two subscribing witnesses who were officers in the Masonic Benefit Association and requested them to make out his will so that the proceeds of this certificate would go to the appellant. The testimony further shows that the deceased and the two subscribing witnesses sat down at a table and the will was "made out"·payable to the appellant and that the witnesses signed their names thereon in the presence of the deceased and in the presence of each other; the deceased having previously requested one of the witnesses to make out his will and assenting to the manner in which the will was made out and assenting to the signing of the same by the witness. We respectfully submit that all the requirements of the law were therefore complied with by these negroes.

The court must bear in mind the fact that the deceased was an ignorant, illiterate negro; that the negroes who made out his will substantially complied with the law in every respect. It cannot be urged that the mere fact that the deceased's name was not signed at the bottom of the will invalidates the will; because of the fact that the deceased's name was signed at the top of the will with the intention of making his signature to the will. In this state the place of signature to a will is immaterial; it may be signed at the top, bottom or at the side of the will. Our law merely says it must be signed; not subscribed. Section 5078, Code of 1906; section 4488, Code of 1892.

Of course a holographic will must be subscribed as provided for in the above sections. But the will before this court in the case at bar is not a holographic will; it has been held throughout the United States that a will

may be signed at any place on the will provided there is
no statute to the contrary. In the states where the place
of signature is not designated by statute the rule estab-
lished is substantially that adopted under the English
Statutes of Fraud; upon which such acts are based and
the place of signature is of secondary consequence pro-
vided where ever the testator may have chosen to place
his name he meant it to stand for his final signature and
thereby authenticates the entire instrument as pro-
pounded.'' 29 Am. & Eng. Ency. of Law, 160-161. See,
also, the following authorities, to-wit: Schouler on Wills
(2 Ed.), par. 312; *Hall* v. *Hall,* 17 Pick. (Mass.) 373;
*Ramsey* v. *Ramsey,* 3 Grat. (Va.) 664; 70 Am. Dec. 438;
*Upchurch* v. *Upchurch,* 16 B. Mont. (Ky.) 102; *Kirkpat-
rick's Will,* 22 N. J. Eq. 463; *Armstrong* v. *Armstrong,*
29 Ala. 538.

In this latter case it is also held that the testator's
name at the beginning of a will dictated by himself, is to
be regarded as a sufficient signing by another at his re-
quest. In our own state there has been no direct decision
on this point but it has been held, and it is an analogous
case that it didn't matter where the signature of the sub-
scribing witnesses of a will appeared just so the signa-
tures were upon the paper and made in the presence of
the testator. See *Elizabeth J. Murray* v. *J. Murphy,* 39
Miss. 214; *Fatheree* v. *Lawrence,* 33 Miss. 585.

So we respectfully submit that this will did not have to
be signed at the physical end to comply with our law.

Here we have then this will signed by the witness for
the testator with the signature in the blank space at the
beginning of the will; we have the attention of the sub-
scribing witnesses in the presence of the testator and of
each other; what else then could be urged against the
validity of this will? Counsel for appellee contend that
the mere fact that the testator failed to use the words
''sign my name'' and the mere fact that the testator
failed to request the witnesses to sign the same, that this.

invalidates this will. What were the attending circum-
stances, we ask? Here is a negro, unable to read or
write, unlearned, but filled with the desire to will the pro-
ceeds of the certificate to his wife, the appellant; he goes
to the officers of his lodge and requests them to make out
his will so that his wife, the appellant, would be the ben-
eficiary. This negro did not know he had to request them
in so many words to sign his name and witness the will;
but he told them to do all that was necessary and when
the will was signed and attested he adopted it as his
will.

There is abundant proof before this court that he
adopted this as his last will. What more could the tes-
tator have done to have complied with the law? The
words used by the testator on this occasion, "Fill out
my will to my wife" embraces all the requests required
by the law. Especially in view of the fact that he adopted
the signature as his signature and accepted and acknowl-
edged the will as his will and ratified the acts of the sub-
scribing witnesses who "made out this will." *Calvin
Miller, et al.,* v. *E. B. Miller, et al.,* 96 Miss. 526.

We, therefore, submit that the will is a valid will under
our laws and as such is subject to probation and that,

1. The mere fact that the testator's name was signed
at the top instead of being subscribed does not vitiate
the will; 2. That the request by testator "To fill out my
will" coupled with the adoption and ratification of the
completed will, is a substantial and a sufficient compli-
ance with the laws of our state.

And therefore the court erred in refusing to allow this
will to be used by appellant in sustaining her contention
for this money and erred in revoking the letters testa-
mentary issued to appellant on the probated will; and in
refusing to give appellant a decree for the amount of the
certificate.

*D. W. Houston, Sr. and Jr.,* for appellees.

We submit, that, even under the authorities cited by counsel themselves, that the testimony, not only does not show that this paper was a completed will; but on the contrary, the testimony shows that it was an incomplete will or a futile attempt to execute a will. The first edition of 29 Am. & Eng. Ency. Law, page 160, quoted by counsel after saying that: ''In states where the place of signing is not designated by statute,—the place of signing is of secondary consequence,'' proceeds immediately to limit and restrict this statement by a proviso, which is like ''the postscript to a lady's letter,'' to-wit: ''provided wherever the testator may have chosen to place his name, he meant it to stand for his final signature, and thereby authenticates the entire instrument as propounded.''

Later on in this same authority, note page 168, when it proceeds to discuss more particularly the question of what is a valid signature, and under the subhead, ''requisites of a valid signature,'' it says: ''The first essential of a valid signature is that the name or mark be put upon the paper, or subsequently adopted, with the intent of authenticating the instrument, so that no further signature on the maker's part is contemplated,'' and under the note to this it says:

''The name of a testator at the commencement of a holograph will is an equivocal act, and unless it appears affirmatively from something on the face of the paper that it was intended as his signature, it is not a sufficient signing under the statute.'' Citing *Ramsey* v. *Ramsey,* 13 Gratt (Va.), 664; 70 Am. Dec. 438; and *Matter of Booth's Will,* 127 N. Y. 109.

''In *Everhard* v. *Everhard,* 34 Fed. 85, the testimony showed that M. Everhard requested one of the witnesses to write his will, which he did, as dictated by said Everhard; that when it was written said Everhard attempted to sign it, but from physical debility was unable to do

so, though, in the attempt made a small mark or scratch on the paper, and failed to do more; that he said he made and published the paper as his last will and testament. It was held insufficient. The court said: "The paper writing shows a small mark or scratch on the left hand corner, but no name attached to it. There are also two small marks or dots on another part of the paper, very dim, and look as though made with the point of a pencil, and not at the usual place for signing such a paper, by the party executing it. The name of M. Everhard only appears in the commencement of the paper, which it is evident was not intended as a signature of the testator. The draughtsman was not requested to 'sign the testator's name' and the testator's effort to sign the paper himself shows he did not recognize the signature made in the commencement of the writing by the draughtsman as his signature. The place where made, and the character of the small marks, and dots, furnish no evidence that they were made as a substitute for the signature of the testator. It is true that a testator may sign his will by making his mark, but he must intend the mark as a substitute for his name; and when there is no name written, or anything indicating who made the mark, and especially when the mark is made at an unusual place for the signature, it ought to require very satisfactory evidence that the mark was intended by the testator as his signature, or as a substitute for it." Cited on p. 169, 29 Cyc. (1 Ed.), under note 1.

It will be noted in this last case, although Everhard, not only requested one of the witnesses to "write his will" (just as John Armstrong requested F. N. B. Ward here) but he went further and dictated to the witness how to write it, that the court specifically says that the draughtsman or said witness was not requested to "sign the testator's name;" and, although Everhard there said that he made and published the paper as his last will and testament (which was not done at all by John Armstrong,

or anything else said by him), the court held that insufficient and no will. Again, on page 174 of this same authority, it says: ''The signature of another, to be valid, must be final; and in the second edition of this same 30 Am. & Eng. Ency., 586, the same language is used.

Now, in this case, of course, John Armstrong did not sign at all, and made no mark whatever upon the paper, and F. N. B. Ward is the only one that counsel contend signed for him by his ''express direction;'' and, F. B. N. Ward, not only swears that he did not sign by Armstrong's express direction, or even authority or request, but that the only thing that he did was to fill up the blank spaces left in this printed form; and that he did not intend, when he wrote the name of John Armstrong at the beginning of the paper, for it to be his final and completed signature; but that, on the contrary, that he knew the place where the name ought to have been signed was at the end on the dotted lines below the body of this writing, but that he did not sign that, but failed to do so by mistake and because John Armstrong did not either direct, authorize or request him to do so.

The fact that F. N. B. Ward happened to be an officer in a mere local lodge of this order at the time, we submit, cuts no figure whatever in the determination of this question. The point is that, according to our statutes (which had been adopted by this lodge as the only method and manner by which any other person the one to whom the policy was originally payable could in any way get or take the money under said policy) that the proof must show (and it fails to show same) that either the maker of the instrument must himself sign same, as and for his completed and final signature, or that some other person must so sign the same by his express direction.

And we go further and say that, even though the scrivener on this occasion had actually written the name of John Armstrong at the physical end of the body of the instrument, we submit, that under the testimony in this

case, this still would not be a valid will, because it would lack the essential element of the express direction on the part of John Armstrong, and also because it would not have been "signed as and for his completed signature, and acknowledged and adopted by him as such at the time," which is the rule laid down in the case of *Sheehan* v. *Kearney*, 82 Miss. 688, from the language of which, as the court will see that in such a case "the signature when signed by another for the testator must not only be at the express direction of the testator as and for his completed signature;" but further and also the same "must be acknowledged and adopted by him as such, at the time."

It will be noted that in that case, the court used the conjunction "and" and not the disjunctive "or."

Counsel urge that this signing is all right, because John Armstrong assented to the manner in which the will was made out and assented to the signing of his name by the witnesses claiming that the filling in the blank after the word "I" at the very beginning, constituted a signing of the will. In answer to this, we call the court's attention to the language of 30 Am. & Eng. Ency. Law (2 Ed.), 585, and the note 13 thereto, under the head of "signature by party other than testator," to-wit: "In numerous jurisdictions, the statutes provide that a will may be signed by some person other than the testator in his presence and by his express direction;" and the note to this is as follows: "Mere assent or acquiescence to another's signing, or knowledge of the testator that his name is being signed, does not meet the requirements of the statute."

As stated also in note 1 on page 1103 of 40 Cyc., under the subhead: "What is not a sufficient compliance"— "The fact that the testator knows that his name is signed by another does not satisfy the statutory requirements as to signing. The signing must be in pursuance of the previously expressed direction of the testator." Citing many authorities.

Again in the same note on the same page, we call the attention of the court to the following: "A refusal by others present to sign for testator at his request leaves the execution ineffective, as his request is not a substitute for the subscription," so here, even if the mere request of John Armstrong that F. N. B. Ward "make out his will to his wife," could be construed, as an express direction to F. N. B. Ward to "sign John Armstrong's name to his will (which we submit cannot be done) still such a request would not be a substitute for the subscription or signing of his name; and the failure or refusal of F. N. B. Ward to actually sign his name, would still leave the execution of this will ineffective and incomplete. The same Cyc. 40, page 1105, in speaking of the location of signatures says: "It is essential, however, that the signature, whatever its local position, must have been made with the design of authenticating the instrument, and (further and also) that he should have contemplated no further signature." Both from the face of the instrument and from the testimony of F. N. B. Ward, such a design is wholly absent; and a further signing and action is shown to have been contemplated and necessary.

Another thing, which is wholly lacking in this case to make this a will; and that is, that it is not shown affirmatively that John Armstrong was made acquainted with the contents of this so-called will, either by having it read over to him or by having it explained to him before he signed it, or authorized or directed any one else to sign the same for him. It is, however, affirmatively shown that he could not read, and that it was not read or explained to him. We quote the following from 30 Am. & Eng. Ency. Law (2 Ed.), 586:

"Knowledge of contents before signature.—It is, of course, essential that the testator should have knowledge of the contents of his will before he signs the same, and, as a general rule, this knowledge is presumed. But the

presumption does not arise where the testator is blind, or illiterate, or for any cause is unable to read, and in such case it must be shown affirmatively that he was made acquainted with the contents of the will by reading it over or explaining it to him before he signed it.''

See to the same effect: 29 Am. & Eng. Ency. Law (1 Ed.), 176; 40 Cyc. 1100.

Counsel all the way through their brief allude to the fact that John Armstrong undoubtedly intended and attempted to make a will to his wife, and seem to argue that this attempt or intention, although not carried out and completed by acts, and, notwithstanding he did not do those acts which are necessary to carry out the intention or attempt to make it a will, that a court of equity will complete and make the will for him by adding the essential elements that he had left out, or reform the will for him.

It would seem hardly necessary to cite authorities that no court will do this; but we will only refer the court to two authorities which are annotated under this section 5078 of the Code of 1906, to-wit: *Schlottman* v. *Hoffman,* 73 Miss. 188, which holds that no court can decree the reformation and correction of a will; and *Johnson* v. *DeLome,* 77 Miss. 15, which holds that courts can no more supply defects in the execution of a will or codicil than that they can add to or substract from its words.

Another thing, to use the language of the court in the case of *Sears* v. *Sears,* 11 Am. & Eng. Ann. Cases, 1012, when considering a will: ''The question is not what did the testatrix intend to do, but what did she do.'' We also refer to this case to show that the name of John Armstrong written at the beginning and in the body of the instrument was merely *descriptio personae.*

We also quote the following from said case on page 1013: ''The statute enacts that the order of probate shall be *prima facie* evidence, and so it is; but it also enacts that the defendant shall offer the will, which he did; and

it appearing from the will itself that it was not signed at the end thereof, the *prima facie* case made by the order of probate is overcome. ᵢ But, if it be said that this is technical, and that what the legislature manifestly intended was that the will and order of probate should make a *prima facie* case, then we have only to say that the legislature could not have intended that it ever should be left to a jury to determine that a will not signed as required by the statute was valid because they found that the testator intended to comply with the statute.'' We also quote the following from the case of *Baker* v. *Brown,* 83 Miss. 797: ''We were at first much impressed with the clear proof made, that the deceased intended this paper to be her testament. But there is no more doubt that she intended the invalid nuncupative codicil to be her testament. Yet as the latter was attested by women who are incompetent testamentary witnesses, no one claims its validity. And so if the holographic will is not signed as required by law, her intentions cannot save it. The question is not whether she intended this paper to be her will, but whether it is a will clothed with the forms of law. An holographic like every other testament, is a solemn act. It matters not how clearly it conveys the last wishes of the decedent, if it is not clothed with the forms prescribed, it is null. We cite also as illustrative of this strictness *Estate of A. C. Rand,* 63 Cal. 468; *Warwicke* v. *Warwicke,* 86 Va. 602.'' We call the court's attention to the fact that this case of *Warwicke* v. *Warwicke,* 86 Va., cited above by our court approvingly, hold that it must appear affirmatively ᵢon the face of the instrument that the name was intended as a signature. One other thing to show that this was not a valid will. Both R. E. Ward on page 41 and F. N. B. Ward on page 60 of the record state that F. N. B. Ward requested R. E. Ward to sign his name to this instrument and that John Armstrong did not request him to do so at all, or make any request of him or say anything about it and that

John Armstrong said nothing whatever after the form had been filled out.

In the case of *Miller* v. *Miller,* 96 Miss. 526 and 532, cited by counsel, the court will see that in that case the court said: "The testimony in this case shows clearly that the testator exhibited his will to Cox and Phillips, two of the subscribing witnesses, stating to them that this was his will, that the signature to it was his signature, and that he had signed it.  The testimony also clearly shows that M. E. Davis, another subscribing witness, wrote the signature of Calvin Miller for him, and at his direction, and that this was the signature adopted and acknowledged by Calvin Miller when he stated the above facts to Cox and Phillips.  This was a good attestation of his signature."

The testimony in this case not only shows no such facts, but, on the contrary, shows that F. N. B. Ward did not sign Jno. Armstrong's name at his direction, and that, after the blanks were filled out, and his name written in one of the blanks, John Armstrong did not exhibit this paper as his will to the two subscribing witnesses and state to them that it was his will, or that his name written in same by F. N. B. Ward was his signature, and that he had signed it.  In fact, he said and did nothing whatever.

In conclusion on this point, we submit, that, if this instrument is a completed, executed will and valid under our statutes, and that these mere words of John Armstrong to F. N. B. Ward "to make out my will to my wife," is sufficient to constitute a valid will, then all that would ever be necessary for any one to do hereafter is to simply say to some lawyer or other person "make out my will to my wife" (or to whomsoever such person wanted his property to go at his death).  Simply this, and nothing more, would the testator have to do; and then all that the lawyer or other person would have to do would be simply to fill in the blank spaces, if he had

a printed form, or if he had no printed form, to simply write, "I, ———————" (giving the name of the party), "do give and bequeath to my wife all of my property," without signing the name of the testator or having the testator to sign same, and this lawyer or other person simply to sign his name as a subscribing witness and request another party to sign his name, and hand this incomplete paper to the testator; and, although he told testator that something else was necessary to be done; and although, testator did not do this, or anything else, or say a single, solitary word, "this would meet all of the requirements prescribed by the statutes and the law; and would be a perfectly valid, legal will. And this, although it was proved that the testator could not read, and that the instrument was not read to him, and that it was not proved that he was acquainted with, and understood, the contents of the paper.

To establish such a doctrine, would not only do away with all of the formalities and essential requisites required by law to make a will; but would open wide the doors for the commission of any and all kinds of frauds.

REED, J., delivered the opinion of the court.

This appeal was a controversy between the widow of a deceased member of the Masonic Benefit Association, claiming to be his designated beneficiary, and his children by a former marriage, over the proceeds of an insurance certificate. John Armstrong, at the date of his death, May 3, 1911, was a member in good standing of the Masonic Benefit Association. The certificate of insurance, dated May 27, 1905, was made payable to him upon his death, and was for five hundred dollars. The amount of this insurance was afterwards, by properly adopted order of the association, increased to seven hundred dollars. On December 3, 1906, John Armstrong designated his wife, Mary L. Armstrong, appellant herein, as his beneficiary in the insurance certificate. The instrument

by which this designation is made is called a will.   It is
claimed that it was not sufficiently executed by John Arm-
strong, by reason of his signature not being placed on
the line at the end thereof.   The following is the benefit
certificate and the so-called will:

"No. 4522.

"MASONIC BENEFIT ASSOCIATION.

(Organized 1880)

Of the M. W. Stringer Grand Lodge

*Deum servamus, nostras viduas et orphanos sustinebi-
mus.*

Office of the Treasurer.

"Will pay to Bro. John Armstrong, of Sesostris Lodge
No. 14, at Aberdeen, Mississippi, who is a member of the

MASONIC BENEFIT ASSOCIATION.

"This certificate witnesseth:   That the Masonic Bene-
fit Association of the M. W. Stringer Grand Lodge of F. &
A. M., of Mississippi, will pay to John Armstrong, upon
his death, five hundred dollars ($500), provided he is in
good financial standing with the Masonic Benefit Associa-
tion and in good standing with his local lodge at the
time of his death.

"Any failure to comply strictly with the laws and regu-
lations of the Masonic Benefit Association, as prescribed
by the aforesaid Grand Lodge, causes forfeiture in the
membership represented by this certificate.

"No suit shall be maintained on this claim unless in-
stituted within one year after the member's death.

"Proof of death must be filed in the M. B. A. within
thirty days after the death of member.

"Given under my hand and official seal at Edwards,
Mississippi, this 27th day of May, 1905.

"[Signed]          .            E. E. PERKINS,
"[Seal.]                            Sec'y & Treas.

---

"I, John Armstrong, of Aberdeen, Miss., age 49 years,
being of sound and disposing mind, give and bequeath

the money due to me by virtue of the certificate upon which this, my last will, is indorsed unto my wife, Mary L. Armstrong.

"In witness whereof, I this the 3rd day of Dec., 1906, sign, publish and declare this instrument as my will, so far as the money is concerned, which is due me after my death from the Masonic Benefit Association. I appoint Mary L. Armstrong as my executor.

"State of Mississippi, Monroe County.

"The said John Armstrong, on the 3rd day of December, 1906, signed the foregoing instrument and published and declared the same in our presence and in the presence of each other, as his last will, and we, at his request, and in his presence, and in the presence of each other, on said date, have hereunto written our names as subscribing witnesses thereof.

"[Signed] F. N. B. WARD, W. M.
"R. E. WARD, S. D."

The form of the certificate and the will is on one page. There is only a line dividing the instruments. From the appearance of the form, it seems that the certificate and the will, when executed, was intended to be considered and read together and as one.

The will contains the statement that it is indorsed upon the certificate. It is shown therein that its only purpose is to dispose of the money to be due to the member on the certificate, from the association, at the time of his death. The form of the certificate indicates that it should be made payable to the member "upon his death . . . provided, he is in good financial standing." The form excludes the idea that it was meant to have the certificate made payable, upon its original issuance, to some other person than the member. It appears to be the plan of the association that the certificate should be made payable to the member to whom it is issued, and that the member should afterwards designate his beneficiary in

the instrument called a will, which follows immediately the certificate and together occupies the face of the sheet which is known as the benefit certificate.

We have carefully examined the rules and regulations of the Masonic Benefit Association. These are called the constitution and by-laws. The only provision we find rel·ative to the issuance of the benefit certificate and the designation of the beneficiary is the form of the policy, and thereunder the form of the instrument, which is stated to be a will. Therefore, with the exception of prescribing a form for the certificate and for the designation of the beneficiary, there is nothing in the rules and regulations of the association to control the manner in which the beneficiary shall be named.

It will be noted that John Armstrong's name is not written on the line at the end of the instrument which he denominates his will, and in which he gives the proceeds of the benefit certificate to his wife. It is shown by the testimony that he was a colored man, unable to read or write; that he went to F. N. B. Ward, one of the attesting witnesses to the will, and who was the Worshipful Master of the local lodge of the association, and requested him to make out his will and make it payable to his wife, Mary Lou Armstrong. Thereupon Ward filled out all the blanks in the instrument in the presence of John Armstrong and his son, R. E. Ward, who was Senior Deacon. The two Wards then signed the attestation to the will. F. N. B. Ward wrote down the name of Armstrong in two places, at the beginning of the will, and in the certificate of attestation. This was done because he was requested by Armstrong to fill out his will, and that meant the writing of all necessary words to make out and complete the execution of the will. The paper was then handed to Armstrong, who delivered it to his wife; and upon his death it was found in her bedroom, framed and hanging on the wall. F. N. B. Ward testified that he signed John Armstrong's name to the will.

105 Miss. 23

It appears to be settled that the right of a member of a benefit society in the amount agreed to be paid in the certificate, at his death, is simply the power to appoint a beneficiary, and that the rules and regulations of such society, such as may be contained in the constitution or charter and by-laws, are the foundation and source of such power. Bacon's Benefit Societies, vol. 1, sec. 237. But we find no requirement in the rules and regulations of the Masonic Benefit Association, relative to the execution of the power to name the beneficiary, except the form of the will set out in the constitution and used in this case. This formality was intended to be complied with by the member, John Armstrong. We understand that the designation of a beneficiary may be made by will. This seems to be the plan of this association.

Has the instrument purporting to be a will been sufficiently executed? It is contended by appellee that it was necessary for the paper to have been signed at the end thereof. The statute of this state (section 5078 of the Code of 1906) provides that a will must be signed by the testator, or some other person in his presence and by his express direction, and if the will is not wholly written and subscribed by the testator, then it shall be attested by two or more credible witnesses in the presence of the testator or the testatrix.

Now, as to the place of signature: We find in 30 Am. & Eng. Ency. of Law (2 Ed.), 582, the following: "Under the English statute of frauds, a will was held to be sufficiently 'signed' if the testator wrote his name at the beginning or in the body of the will with intent thus to sign the instrument; and this rule has been followed in those jurisdictions wherein the statute is silent as to the place of signature, with the modification, in some instances, that the intent to sign must appear upon the face of the will." In 40 Cyc. 1104, is the following: "Where the statute relating to signing requires no more than the statute of frauds—merely that the will shall be

in writing, and be signed—it is immaterial where the testator's signature was placed, if it was placed there with the intention of authenticating the instrument." It is stated to be the general rule, applicable to the signature to writings of various kinds, that "it is now almost universally held that, if the name of the party to be charged is written by himself or his representative anywhere in the body of the instrument, with intent thereby to authenticate it and render himself bound, it is a good signature." *Lampkin* v. *State*, 105 Ala. 1, 16 South. 575; *In re Camp's Estate,* 134 Cal. 233, 66 Pac. 227; *Cunningham* v. *Hawkins,* 163 Mich. 317, 128 N. W. 223.

In the case of *Armstrong* v. *Armstrong,* 29 Ala. 538, wherein it was held that the writing of the name of the testator at the beginning of the will was sufficient, RICE, C. J., said in delivering the opinion of the court: "It is not essential that the testator should write his own name. The British statute, as well as our own, allows a will to be signed for him by another; and his name, when written by another, for him, in his presence, and by his direction, will have the same effect as if it had been written by himself. Although his name is not written by himself, nor subscribed to the will, yet, if it be written in the beginning of the will, by another, in his presence, and under his direction, and if it be acknowledged by him to the attesting witnesses, at the time he calls on them to attest and subscribe it, it will be as effectual as if with his own pen he had written it."

It seems that a distinction has been made between the meaning of the words "sign" and "subscribe." In the case of *M., K. & T. Railroad Company* v. *Denton,* 29 Tex. Civ. App. 284, 68 S. W. 336, the court, in holding a signature in the body of an instrument, called attention to the fact that the statute requiring such signature provided that such instrument should be "signed," and not that it be "subscribed." It will be noticed that the statute in Mississippi prescribes that the will shall be signed

by the testator, or some other person, at his direction, where it is not wholly written by him, and that, when it is wholly written by him, it shall also be subscribed by him.

We do not find any decision of this court wherein the question of the location of a signature to a will has been passed on. In reference to the location of the signature of the witnesses attesting the will, it has been decided in the case of *Fatheree* v. *Lawrence,* 33 Miss. 585, that the purpose of attestation is to identify the instrument signed and published by the testator, and that no particular form of words is necessary to constitute an attestation. In the case of *Murray* v. *Murphy,* 39 Miss. 214, it is decided that it is immaterial as to what particular part of a will is located the name of the attesting witness. It is settled under the laws of this state that a signature to a will may be made for a testator by another party writing his name (*Watson* v. *Pipes,* 32 Miss. 451) ; and a testator may be assisted in signing his will by having his hand steadied by another party, and can also sign by his mark (*Sheehan* v. *Kearney,* 82 Miss. 688, 21 South, 41, 35 L. R. A. 102).

We find from the testimony in this case that John Armstrong had the purpose definitely in mind to make his will, so that his wife could be designated as the beneficiary in his insurance certificate. He went to an officer of the local lodge, the person who had full information on the subject, and knew how to write the paper in the proper manner and in conformity with the prescribed form of the association; and he directed that his will be made out, and that the insurance should be given to his wife. The officer wrote out the instrument as directed. In compliance with our statute, it was written in the presence of the testator, and at his express direction. Such express direction followed and was obedient to the request by Armstrong contained in the words, "Fill out my will to my wife."

Armstrong could neither read nor write. This was known to Ward, and Ward intended to write every word necessary in the blank form in the will, including the signature of Armstrong. He knew that this was contained in the request made of him to fill out the will. Armstrong gave him all necessary information to enable him to prepare the paper. It is hardly possible that Armstrong knew the meaning of all the formal words used in making the bequest. It was sufficient for him to know that he was designating his wife as beneficiary in the will. He depended upon the man, the officer of the association, who had superior knowledge and who had special capacity to do what he desired. The will was properly attested by the witnesses when it was then handed back to Armstrong. All the parties, the testator and the witnesses, understood that it was a completed and executed instrument, and it was so afterwards dealt with. Armstrong delivered it to his wife, the beneficiary. She had it in her possession and before her in her room, so that it could be easily seen by all. No one afterwards questioned the sufficiency of the execution of the paper. In fact, the record discloses that it was duly proved by the testimony of the subscribing witnesses and admitted to probate in accordance with the provisions of the statute. The execution further complied with the provisions of the statute by the attestation by two witnesses in the presence of the testator.

The Mississippi statute does not state where the signature of a testator to a will shall be located. It does not say that the will shall be signed or subscribed at the end thereof. As the statute is silent as to the place of signature, and merely provides that the will shall be in writing and signed, we believe the rule that it is immaterial where the signature of the testator should be placed on the instrument should be followed in this state. It seems clear that it was the intent of the testator to make and execute this instrument as his will, for the purpose

of designating his wife as the beneficiary in his insurance certificate. We therefore decide that the instrument is sufficiently executed and is a valid will under the law.

We have not entered into any statement or discussion of the pleadings in this case, as we have not deemed it necessary to do so. The Masonic Benefit Association, by an interpleader, admitted its indebtedness under said insurance certificate, in the sum of $700. It is contended by the appellees that the will was not sufficiently executed, and therefore invalid, and that the amount due under the benefit certificate descended to, the heirs at law of John Armstrong, who are the appellant, his widow, and the appellees, his children by former marriage. The chancellor decided this issue in favor of the appellees, holding that the will was not the true and last will of John Armstrong. We conclude that the court erred in doing this.

The case is therefore reversed, and judgment entered here in favor of the appellant, and dismissing the original bill of the appellees.

*Reversed.*