78 So.2d 385

Charles William PLEMONS

v.

Francis J. TARPEY.

8 Div. 648.

Supreme Court of Alabama.

Feb. 24, 1955.

Eyster & Eyster and Peach, Caddell & Shanks, Decatur, for appellant.

Harris & Harris, Decatur, for appellee.

SIMPSON, Justice.

This is a will contest where the proponent was successful in the court below and the contestant has appealed. The facts more fully appear in the dissenting opinion of the Chief Justice, to whom the case was originally assigned.

Appellant argues for error in the trial for the refusal of the court to give the affirmative charge with hypothesis on two theories: (1) The testatrix did not acknowledge her signature before the attesting witnesses and (2) because even if her signature, it was placed at the top of the instrument in the left-hand corner and our statute of wills does not permit the signing of the instrument in such manner.

The Chief Justice holds to the view advanced by appellant, but the other Justices are in disagreement and the case has been assigned to the writer for preparation of the opinion.

As appears in the dissenting opinion, the will begins: "Mrs. Nellie O'Connor
    813 4 Ave E
    this is my will" etc.

Then follow various dispositions and at the conclusion of the instrument appear the signatures of the two attesting witnesses. As we will show, the name "Mrs. Nellie O'Connor" was that of testatrix and there was sufficient evidence for the jury to conclude that it was her signature and that she so acknowledged it before the attesting witnesses when she asked them in substance to witness her "will."

The argument against holding that the name of Mrs. O'Connor at the top of the will was not a valid signature to it seems to run thus: While the will would have been validly signed had she written "I, Nellie O'Connor, 813—4th Avenue East, do will etc." Armstrong's Ex'r v. Armstrong's Heirs, 29 Ala. 538, yet by writing

"Mrs. Nellie O'Connor
    813 4 Ave E
    this is my will" etc.
it was not a valid signing.

The postulate not only impresses us as erroneous but also contrary to the stronger current of opinion in jurisdictions where the statutes are similar to our § 24. Title 61, Code, which, as to signing of a testamentary document, merely provides that to be effectual the will must be "signed by the testator or some person in his presence, and by his direction" without specifying, as some statutes in other jurisdictions do, that the signature must be at the "end" or "foot" of the instrument.

The prevailing rule is thus stated in 57 Am.Jur. 211, § 263:

"* * * The view which prevails generally, although not with complete unanimity, is that where the statute does not fix the location of the signature of a testator to a will but merely provides that the will shall be in writing and signed, the signature of the testator may be placed at the beginning of the will, in the attestation clause, in the margin of the will, or anywhere on the face of the instrument, provided it is attached with the intention of authenticating the instrument * * *"

Of similar import is the following statement from 68 Corpus Juris 661:

"* * * Where the statute relating to signing requires no more than the statute of frauds—merely that the will shall be in writing and be signed, it is immaterial where the testator's signature was placed, if it was placed there with the intention of authenticating the instrument * * *"

These statements of the general rule are well supported by the cases in other jurisdictions, even though research has failed to disclose a case exactly similar to the instant one.

Alabama follows the general rule. The essential for a valid signing, wherever the local position on the instrument, is that the signature must have been placed there with the intent of authenticating the document as the testator's completed testamentary act. Armstrong's Ex'r v. Armstrong's Heirs, supra; Reynolds v. Massey, 219 Ala. 265, 122 So. 29; 29 A.L.R. 892.

The Armstrong case takes notice of the fact that our statute with reference to the signing of a testamentary document is similar to § 5, 29 Charles II, Ch. 3, and that we, therefore, in interpreting it follow the rule of the early English cases, such as Lemayne v. Stanley, 3 Lev. 1, and Morison v. Turnour, 18 Vesey 176, which cases interpreted the statute as mandating no particular location on the instrument for the signature of the testator, just so it was made with the intent of authenticating it as the testator's testamentary act. Indeed, the Lemayne case stated that the will being written by the testator himself, "it is a sufficient signing within the statute, which does not appoint where the *will* shall be signed, at the *top, bottom* or *margin,* and therefore a *signing* in any part is sufficient." Turnour's case reaffirmed the principle, even though in these two cases the testator's signature appeared in exordium.

But having reached the conclusion that the signature of the testator is not required under the statute to be at any particular place on the instrument, it is unrealistic and not altogether logical to say that the statute should be interpreted as limiting the placing of the signature of the testator within the four corners of the words of the instrument themselves. There is no such rule as this and it is against the weight of authority in jurisdictions where the statute is similar to our own.

The expression in Reynolds v. Massey, 219 Ala. 270, 122 So. 34, in treating of the efficacious attestation of the will, "what is intended by the testator to operate as a signing by him * * * whether written in its face * * * or affixed at the foot thereof" in no way imports a holding that the testator's signature is to be limited in its location to the actual body of the document or at the foot. Rather, that the signature may be affixed anywhere on the "face" or front of the instrument, since this court has ruled that the face of an instrument includes more than the actual body. Sacred Heart Church Building Committee v. Manson, 203 Ala. 256, 82 So. 498 (an endorsement "on the margin at the top" of a note referred to as "on the face of this note") and Verner v. White, 214 Ala. 550, 108 So. 369 (writing "across the marginal end" referred to as "upon the face of the paper" as distinguished from "as if found in the body of the instrument.")

This general rule that the signature may be placed anywhere on the instrument unless the statute stipulates the location to be otherwise comports with the analogous rule that it is not necessary for the attesting witnesses to a will to sign at the foot, but that they may sign on any part of the will, if with the intention of attesting it. Hughes v. Merchants Nat. Bank, 256 Ala. 88, 53 So.2d 386 (where subscribing witnesses signed at top of instrument).

These two rules, it seems to us, coincide to a logical result and are consonant with the whole theory that the location of the signature of either the testator or the "subscribing witnesses" is not controlling, but the intent with which the signatures are affixed being the essential of the statute.

To recapitulate, § 24 provides:

"No will is effectual to pass real or personal property, except in the cases

hereinafter provided for, unless the same is in writing signed by the testator or some person in his presence, and by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator."

There is no more logic in making a distinction between the location of the signatures of the attesting witnesses than that of the testator, although "subscribed" would seem to import more a signing at the bottom of the will than elsewhere. The correct rule in each case should be, it seems to us, as follows:

1. The statute not fixing the location of the signature of a testator to a will, but merely providing that it shall be in writing and signed, it may be placed at the top, in the margin, or anywhere on the face of the instrument provided it is affixed thereto with the intention of authenticating it as the testator's completed testamentary act.

2. Our statute not requiring that attesting witnesses sign their names at the foot or end of the will, its condition is met by the witnesses affixing their respective signatures on any part of the instrument with the intent of attesting it, the essential being that by their signatures they intended to affirm their due attestation of the document as subscribing witnesses.

We also entertain the view that there was sufficient evidence to go to the jury on the issue of the due execution by Mrs. O'Connor of the instrument as her last will and testament.

There was proof, or at least the jury could in reason infer, that the document was in Mrs. O'Connor's own handwriting; that she called the two subscribing witnesses to witness her signature, telling them that this was her will and that she wished for them "to sign it" and that they did in fact affix their signatures in Mrs. O'Connor's presence as attesting witnesses to it. Mrs. Moore testified that she recognized the paper as the one she signed on the day she was requested by testator to witness it; that she signed it in Mrs. O'Connor's

presence as it was lying on the desk and wrote beside her name "witness" at the bottom of the instrument. "I took the paper in my hand and read it a little bit, and being familiar with Mrs. O'Connor's handwriting and she asking me to sign it, I signed it; it was her will and I signed it."

"Q. Did you see her name on it at that time? A. Yes and I know it was her handwriting. It was her writing."

"Q. And she asked you to sign it? A. Yes sir.

"Q. You then wrote the word 'witness' on it and signed your name. A. Yes, sir."

She also testified that although Mrs. O'Connor did not tell her she had signed her name at the top "she didn't need to, I saw it there."

The other subscribing witness, Mr. Garrison, who signed his name under Mrs. Moore's, testified that he affixed his signature to the instrument under that of Mrs. Moore at Mrs. O'Connor's request and that "he witnessed her will for her."

Under the rule of Armstrong's Ex'r v. Armstrong's Heirs and the later case of Massey v. Reynolds this was undoubtedly enough proof to go to the jury on the question of due execution of the will. As was stated in Massey v. Reynolds, 213 Ala. 178, 183, 104 So. 494, 499, "The burden of proof, in order to make out a prima facie case, rested on the proponent to offer some testimony showing the will was in writing; that it was signed by the testator; that two persons subscribed their respective names to it as witnesses in the presence of the testator under the word 'witness.' * * * No particular form of words of the testator is necessary in his acknowledging to the subscribing witnesses that the name on the instrument is his signature. It may appear to them and be proved by his words, or by his acts, or by the circumstances surrounding him and them at the time of the subscribing, or it may appear to them and be proved by a combination of all three—his words, his acts, and the circumstances

surrounding them." Requoted in Reynolds v. Massey, supra, 219 Ala. 269, 122 So. 29.

We hold, therefore, the proponent met the burden of proof, made out a prima facie case as to due execution of the instrument, and the court correctly submitted the issue to the jury.

Affirmed.

All the Justices concur except LIVINGSTON, C. J., who dissents, and MAYFIELD, J., not sitting.

LIVINGSTON, Chief Justice (dissenting).

This appeal is from a verdict and judgment rendered in the Circuit Court of Morgan County, Alabama, which admitted to probate a certain instrument offered as the last will and testament of Mrs. Nellie O'Connor, deceased.

Mrs. O'Connor resided in Decatur, Alabama, for many years. During the latter years of her life, she lived in the downstairs apartment at 813 Fourth Avenue, East, Decatur. Mrs. O'Connor was an uneducated woman, yet was considered to be sound in mind throughout the full course of her life. Her sanity or mental condition has not been questioned.

At the time of her death in 1950, Mrs. O'Connor was a widow. Her only children, Charles and Thomas J., had predeceased her. Charles had never married.

Thomas J. O'Connor married Mary Carter on August 20, 1916. On October 7, 1918, a son, Charles William O'Connor, was born to them. In 1921, Thomas J. O'Connor and Mary Carter O'Connor were divorced. Mrs. O'Connor received the custody of their child. On December 6, 1924, Mary Carter O'Connor married one Theodore Plemons of Decatur. These parties moved to Nashville, Tennessee, shortly thereafter, and, in 1929, the name of Charles William O'Connor was changed to Charles William Plemons. Charles William Plemons, the appellant, is the grandchild of Mrs. Nellie O'Connor. He is her surviving heir and next of kin, inasmuch as Thomas J. O'Connor never remarried after his divorce in 1921.

Thomas J. O'Connor died on September 5, 1949, at the home of his mother. After his death, Miss Annie Belle Moore stayed with Mrs. Nellie O'Connor as a housekeeper until November 23, 1949. The evidence shows that some time during the first week of November, 1949, Mrs. O'Connor called Miss Moore into her living room at 813 Fourth Ave., Decatur, and handed to her a piece of paper on which was written in the hand of Mrs. O'Connor the following:

"Mrs. Nellie O'Connor,
813 4 Ave E

"this is my will at present I have not maid up my mind yet I leave to my own people every piece of property I have I leave all my property to two sisters Mrs. Thomas Devine Mrs. Jerry Tarpy —to divide among there children. Also among Mr. O'Connor nephews there are five three boys and two girls my sister will have charge of it she must be fair to devide all there or I want my Father Grave first in Ireland tended to first and she can take her time Just sell the back house 809 forth ave E first —keep the 813 4 Ave E devide among the rest

I dont want no words among about it ecall parts to all I have two in Ireland Lyons Girl and Boy Each one gets the Same amount my Sisters to devide each one I cannot know how much it will bring I hope I will live to sell it myself and do the work I worked hard to make it." (Emphasis added.)

The evidence does not show when Mrs. O'Connor wrote the instrument in question. It does not show whether all of the document was written on one, or more than one occasion. No evidence was presented as to when the name and address were affixed in the upper left-hand corner of the instrument. The evidence does not make known whether said name and address were written after or before the supposed exordium and body of the document.

Miss Moore testified that she had never previously seen the paper or writing handed to her by Mrs. O'Connor. Also, Miss Moore testified that at the time Mrs. O'Connor presented the document to her the latter had said:

"This is my will, and I would like for you to sign it."

Miss Moore stated that she then assented, and in the presence of Mrs. O'Connor added to the document in the lower left-hand corner the following:

"Witness
"Anna Belle Moore"

Though Miss Moore stated, that at that time, she recognized the handwriting to be that of Mrs. Nellie O'Connor, Mrs. O'Connor never told her that the writing in the top left-hand corner was hers, or acknowledged it to be her signature in any manner. Miss Moore never again saw the document in question until the eve of this litigation.

The evidence further shows that shortly thereafter, in November of 1949, Mrs. O'Connor asked Lauren L. Garrison, a friend of long standing, to witness her will. Garrison also assented, and in the presence of Mrs. O'Connor wrote his name directly under that of Anna Belle Moore. Thereafter, Garrison never saw or heard of the document again until immediately prior to this litigation.

Mrs. Nellie O'Connor had two sisters. One sister, a Mrs. Tarpey, also lived in Decatur. The other sister, a Mrs. Thomas J. Devine, lived in Nashville, Tennessee. Mrs. Tarpey, the mother of the proponent, died on March 13, 1950.

On August 7, 1950, Mrs. Nellie O'Connor died, then being some 80 years of age. After Mrs. O'Connor's death, an inquiry was made for a testamentary document by her, but none was found. On October 21, 1950, Francis Tarpey, the proponent, found the document in controversy in a safe at his mother's house. How the document 'in question got into Mrs. Tarpey's safe is not shown by the evidence.

Tarpey filed a petition to probate the document on November 7, 1950, in the Probate Court of Morgan County, Alabama. Contest was thereafter appropriately filed by Charles William Plemons, the grandson of Mrs. Nellie O'Connor, and the cause was transferred for trial by jury to the Circuit Court of said county.

The contestant requested in writing the affirmative charge with hypothesis, but said charge was refused by the trial court. The correctness of the lower court's ruling is raised by appellant's Assignments of Error Nos. 18 and 19.

Our statute relative to the execution of wills, Tit. 61, § 24, Code of Alabama 1940, follows the early English statute of 29 Charles II. Under the Alabama statute, no will is effectual to pass real or personal property, except in certain specified cases not here pertinent, unless the will is (1) in writing, (2) *signed by the testator* or some person in his presence, and by his direction, and (3) attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator. Requisite number (2) is the only portion of the statute that we are concerned with here. In short: Was the document offered for probate as the last will and testament of Nellie O'Connor sufficiently "signed" to satisfy the terms of Tit. 61, § 24, supra? In will contest, whether undisputed facts with reference to execution of will were sufficient as a matter of law to show legal execution of will, is a legal question and not a jury question. Code 1940, Tit. 61, §§ 24–52; Johnston v. King, 250 Ala. 571, 35 So.2d 202.

Lemayne v. Stanley, 3 Levinz 1, 83 Eng. Reprint 545, provided judicial construction of 29 Charles II. In that case, one Stanley wrote his own will beginning:

"*In the Name of God,* Amen, *I* John Stanley *make this my last Will and Testament.*"

Stanley did not subscribe his name to the will. The question before the court was whether or not a sufficient "signing" had been made under the English statute. In sustaining the will, the court stated:

" * * * for being written by himself, and his Name in the *Will,* it is a

sufficient Signing within the Statute, which does not appoint where the *Will* shall be signed, in the *Top, Bottom,* or *Margin,* and therefore a *Signing* in any Part is sufficient: * * * "

Morison v. Turnour, 18 Vesey, Jr., 175, elucidates the fact that the rule of Lemayne v. Stanley, supra, was subsequently modified. There, Lord Chancellor Eldon concluded as follows:

"I observe, Lord Hardwicke in Grayson v. Atkinson (1), commenting upon Lemayne v. Stanley, intimates a very clear opinion, that if the testator with his own pen says 'I, A. B. do make this my Will,' &c. and acknowledges that before the witnesses, that is a good execution; and that the case in Levinz *cannot be sustained, unless you add one of two circumstances;* either *that the witnesses were present, when he was writing the Will;* which, Lord Hardwicke justly observes, is not a natural presumption; or, *if they were not present, that he acknowledged it to be his writing, when he called them in to attest it; * * *."* (Emphasis supplied.)

Many courts in this country, as well as the English courts, have seriously questioned the wisdom of the holding of Lemayne v. Stanley, supra. As modified, it continued to be recognized as authority in England until the statute, 1 Vict., C. 26, 39, required that wills "be signed at the foot or end thereof." Still later, that statute proved unsatisfactory, and was further amended by 15 and 16 Vict., C. 24, 31, which made wills valid " * * * if the signature shall be so placed at or after, or following, or under, or beside, or opposite to the end of the will, that it shall be apparent on the face of the will that the testator intended to give effect by such his signature to the writing signed as his will * * *."

The early English statute of 29 Charles II, enacted in 1677, was followed not only in Alabama, but in numerous other states. Where an English statute which has received a settled construction is re-enacted here, we must presume that the legislature intended to adopt it as construed. Accordingly, the courts of most states which have left their statutes (following 29 Charles II) unimpaired by amendment have tended to adopt the aged rule of Lemayne v. Stanley, supra. The interpretation of that rule, however, has differed to some extent in the various jurisdictions, especially concerning its modification as set forth in Morison v. Turnour, supra. In that case, as previously mentioned, Lord Chancellor Eldon emphasized a modification to the holding of the Lemayne v. Stanley case, supra. There, Eldon stated that if the witnesses were not present when the testator was writing his will, the testator must have "acknowledged it to be his writing, when he called them in to attest it." Exactly what did the Lord Chancellor mean? Is it sufficient that the testator subsequently merely acknowledges the document to be his will, or is it necessary for him to acknowledge that his name, the writing is his signature? The statute of 29 Charles II makes no provision for an acknowledgment of the signature; yet, in the great majority of states which have wills statutes based upon the said English statute, such acknowledgment is deemed proper. Some states under these statutes hold that an acknowledgment of the instrument as the testator's will, or as his act or deed, is sufficient. Other jurisdictions, however, which have these statutes, have held that there must be an acknowledgment of the signature, as such, and that the signature must be visible. In the opinion of this writer, Alabama follows the latter rule. Mr. Justice Miller, speaking for this court in Massey v. Reynolds, 213 Ala. 178, 104 So. 494, 498, stated:

"While it is not necessary that the subscribing witnesses be present when the testator signs the will and see him sign it, still it is necessary that each subscribing witness must attest it; that is, each must see him sign it or see his name on it and have his acknowledgment that it is his signature before or at the time each subscribes his name to it as a witness."

Upon consideration of the true meaning of "attestation," we are convinced that the

Alabama rule is the correct one. "Attestation" consists in the witnesses seeing that those things exist and are done which the statute requires. Attestation is the act of the senses; subscription is the act of the hand. The one is mental, the other mechanical. To attest the signature means to take note mentally that the signature exists as a fact. If this is done, and the attestor also subscribes his name, the statute is complied with. The essential thing is that by his signature the witness means to affirm that the testator executed the will in his presence. Therefore, mere acknowledgment of the document as one's will does not suffice to warrant a holding of due execution by the testator, when the testator, has signed his name to the document out of the presence of the witness. In order for the testator to have "signed," as required by our statute, under such circumstances, he must acknowledge to the witness that his name thereon is his signature to the document prior to the time that the witness subscribes.

According to the evidence here presented, Anna Belle Moore and Lauren L. Garrison were the two witnesses to the document in question. The record affirmatively shows that Mrs. O'Connor, the testatrix, never told Anna Belle Moore that she (Mrs. O'Connor) had ever signed the will. It follows, therefore, that the testatrix never acknowledged her name in the top left-hand corner of the instrument to be her signature (for the purpose of authenticating the document). Also, there is no evidence which shows that the testatrix ever acknowledged to Lauren L. Garrison that the name upon the document was her signature. Thus, we conclude that Mrs. O'Connor never "signed" the instrument offered for probate as required by Tit. 61, § 24, Code 1940. Because of such noncompliance, contestant's requested written affirmative charges Nos. 16 and 17, and set forth in appellant's Assignments of Error Nos. 18 and 19, should have been given by the trial court. The lower court's failure to give said charges was reversible error.

Had the name of the testatrix been acknowledged as her signature, we, nevertheless, would have reached the same conclusion as to the merit of contestant's requested written charges Nos. 16 and 17. As previously stated, the top left-hand corner is the only place upon the document in which the testatrix' name appears. Tit. 61, § 24, supra, merely requires that a will be "signed" by the testator, or some person in his presence, and by his direction. Does it follow that the signature can be placed anywhere upon the instrument—in the top left-hand corner, or upon its back? After an extensive independent examination of the authorities in this country and in England, we conclude that such a holding would be erroneous. In Armstrong's Ex'r v. Armstrong's Heirs, 29 Ala. 538, this court did follow the English interpretation of the word "signed" as stated in Lemayne v. Stanley, supra. Yet, it should be noted that the testator's name in that Alabama case, as in the English case, was *in the body of the will* itself. In each case, the testator's name was in the exordium clause, and was held to be sufficient as his signature. A name which appears in the exordium clause, or in the attestation clause, or anywhere within the body of the will, however, in our opinion, is quite another thing from one which merely appears in a top corner of the instrument, or a name which merely appears on the back thereof. Though we do not here intend to pass upon the wisdom of the rule set forth in Armstrong's Ex'r v. Armstrong's Heirs, supra, which refers to the position of the testator's name, we do not think that its holding can be extended to apply to the case presently before us. The opportunity and occurrence of fraud would obviously be greatly enhanced should the holding of Lemayne v. Stanley, supra, and that of Armstrong's Ex'r v. Armstrong's Heirs, supra, be held to apply to the document in controversy. Nothing can be gained by restating each of the cases we have carefully read, relating to the sufficiency of the testator's name upon a will, where it has been located other than at the foot or near the end thereof. To the best of our judgment, we have examined them all. Practically all of such cases concern wills upon which the testator's name appears some-

where in the body of the will. In short, we are not aware of a single case in which an untorn and complete document has been presented for probate that is authority for extending the rule established in Lemayne v. Stanley, supra, and followed in Armstrong's Ex'r v. Armstrong's Heirs, supra, to a will upon which the testator's name appears only in the top left-hand corner. In re Miles' Will, 4 Dana 1, 34 Ky. 1, contains erroneous dictum to the contrary, but dictum alone. In that case, as in numerous others, the name of the testatrix was in the exordium clause. Also, Armstrong v. Walton, 105 Miss. 337, 62 So. 173, 46 L.R.A.,N.S., 552, In re Lagershausen's Estate, 224 Wis. 479, 272 N.W. 469, and In re Home's Will, 231 Wis. 227, 284 N.W. 766, 285 N.W. 754, contain statements similar to that of the Kentucky court. However, the testator's name in Armstrong v. Walton, supra, and that of the testatrix in In re Home's Will, supra, were both within an exordium clause. Furthermore, a careful reading of the latter case leads one to believe that the expression "at the top", as stated in In re Lagershausen's Estate, supra [224 Wis. 479, 272 N.W. 471], was meant to refer merely to an exordium clause. In re Thomas' Estate, 243 Mich. 566, 220 N.W. 764, 765, states that the testatrix' name can be "signed anywhere," and that the "question is ruled by Stone v. Holden, 221 Mich. 430, 191 N.W. 238, 29 A.L.R. 884." In the latter case, however, the testator had written his name not only in the exordium clause, but also in the attestation clause. The court in Stone v. Holden (In re Norris' Estate), supra, had merely concluded that "the testator need not sign the will at the end in order to constitute a valid signing." [221 Mich. 430, 191 N.W. 241.] We, therefore, are of the opinion that the language of In re Thomas' Estate, supra, is extremely questionable, and that the authority which supposedly "ruled" the court's opinion did not exist.

In re Streeton's Estate, 183 Cal. 284, 191 P. 16, 18, in which the testator signed his name upon the upper left-hand corner of the document, is of little, if any, aid in the determination of the instant case. There, the bottom portion of the document had been torn off, leaving no space at the bottom of the holographic instrument for the testator's signature. "Under the circumstances", the California court held that the name upon the will was signed "with the intention of authenticating the same." The space in the upper left-hand corner in that instance was held to be "the most natural one in which to place a signature when the usual place at the end of the document is unavailable." In short, the fact that the end of the page was torn off tended to support the inference that the name was written at the top of the page with the intention of authenticating the instrument.

In re Johnson's Estate, 209 Iowa 757, 229 N.W. 261, also contains certain language contrary to this opinion. In that case, however, the testator's name appears no less than three times within the body of the instrument. Clearly, the conflicting statements of the Iowa court were mere dicta, and are of no appreciable weight in the determination of the present controversy.

The right to make a testamentary disposition of property is not an inherent right or a right of citizenship; it is not a right granted by the constitution. It rests wholly upon the legislative will, and is derived entirely from the statute. In conferring that right, the legislature has prescribed certain exactions and requirements looking to the execution and authentication of the document. A compliance with these requirements becomes necessary to the exercise of the right.

While it is a cardinal rule of construction in the law of wills that the intention of the testator, as expressed, must govern, the intention to make a will, although clearly stated or proved, will be ineffectual unless the execution thereof complies with the statutory requirements. It is the intention of the legislature, not that of the testator, which is to be considered in determining whether the statute has been complied with, even though the application of this principle in some cases will work a hardship and thwart the intended dispo-

sition of property. In our opinion, it is better that this should happen under a proper construction of the statute than to allow an individual case to weaken the provisions calculated to protect testators generally from fraudulent actions. No statute can completely eliminate the chance of fraud; yet, if the statute is properly construed and enforced, such fraud definitely can be lessened and discouraged.

We conclude, therefore, that the name of the testatrix, located in the top left-hand corner of the instrument does not meet the requirement that the will be "signed" by the testator or some person in his presence and by his direction. In order to conclude otherwise, we would have to extend the holding of Armstrong's Ex'r v. Armstrong's Heirs, 29 Ala. 538. To do so, in our judgment, would be contrary to the intent of our legislature, and would result in the encouragement of fraud.

In view of the contrary opinion of my brethren, the foregoing expressions become the individual views of the writer, and serve to indicate my disagreement with the opinion of the majority, from which I respectfully dissent.