DWIGHT SMITH, executor, *vs.* SARAH A. S. BUFFUM & others.

Franklin. December 4, 1916. — March 22, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Will*, Subscription of witnesses. *Words*, "Subscribe."

A will has been subscribed by three witnesses in accordance with the requirement of R. L. c. 135, where the third witness, intending to sign his own name, after signing his first name, which was the same as the first name of the preceding witness, unconsciously and inadvertently copied the rest of the name of the preceding witness instead of finishing the writing of his own name.

APPEAL from a decree of the Probate Court for the county of Franklin allowing an instrument offered for probate as the last will of Oscar G. Stratton, late of Greenfield.

The appeal was heard by *Braley*, J., who made a report in which he found the facts that are stated in the opinion, and reported the case upon the pleadings, the objections of the appellants and his findings of fact for determination by the full court. His report concluded as follows: "If, as matter of law, upon the foregoing findings, the will was duly attested and subscribed as required by

the provisions of R. L. c. 135, § 1, the decree of the Probate Court is to be affirmed; if not so attested and subscribed, the decree of the Probate Court is to be reversed and probate of the will refused."

R. L. c. 135, § 1, is as follows: "Every person of full age and sound mind may by his last will in writing, signed by him or by a person in his presence and by his express direction, and attested and subscribed in his presence by three or more competent witnesses, dispose of his property, real and personal, except an estate tail, and except as is provided herein and in chapters one hundred and thirty-one and one hundred and thirty-two and in section one of chapter one hundred and fifty-three. A married woman, in the same manner and with the same effect, may make a will."

The case was submitted on briefs.

*F. J. Lawler & A. S. McLaud,* for the executor.

*W. F. Frederick & C. N. Stoddard,* for the appellants Buffum and Chase.

*H. E. Ward,* for the appellants Stratton and Stetson.

RUGG, C. J. This is a petition for the probate of a will. It was duly declared and signed by the testator. The instrument then was subscribed by two of the three qualified attesting witnesses in their own names, namely, by Ruth B. Franz and William H. Gould. The third, William A. Davenport, intending to sign his own name as a subscribing witness, wrote "William H. Gould." The truth was not discovered until after the death of the testator. The question is, whether upon these facts the instrument was "attested and subscribed . . . by three . . . competent witnesses" as required for the execution of a will by R. L. c. 135, § 1.

The distinction between the acts of attestation and of subscription demanded for the due execution of a will by the words of this statute was elaborated in *Nunn* v. *Ehlert,* 218 Mass. 471. But that case does not reach to the point here presented. It there was held, however, that the act of subscription is for the purpose of identifying the paper on which the signature of the testator previously has been made and attested. Doubtless the word "subscribe" in this connection ordinarily means the signing of one's own name. But this is not its necessary and universal significance. As was said in *Chase* v. *Kittredge,* 11 Allen, 49, 59, "a witness may subscribe by a mark as well as by writing his name in full. This is now well settled both in England and in the United States." Since,

as was pointed out in *Nunn* v. *Ehlert*, 218 Mass. 471, our statute of wills is in this particular like the words of the English statute, decisions of the courts of that jurisdiction are especially pertinent. In *Goods of Ashmore*, 3 Curt. Eccl. 756, a witness named Elizabeth Sharpe signed the will by a mark, but by inadvertence the name "Elizabeth Cummins" instead of her right name was written around the mark, and the will was held to have been witnessed. The same conclusion was reached in *Goods of Christian*, 2 Rob. Eccl. 110, where witnesses subscribed a will by their full names, but signed the codicil by their initials only. In *Goods of Olliver*, 2 Spinks, Eccl. & Adm. 57, a solicitor named Richard Edmunds subscribed his name, and his clerk, named John Edmunds, subscribed "John Clerk, his clerk." This was held to be a good subscription. In *Goods of Sperling*, 3 Sw. & Tr. 272, one Thomas Saunders subscribed simply "Servant to Mr. Sperling," and this was held to be enough to satisfy the statute. See, also, *Charlton* v. *Hindmarsh*, 1 Sw. & Tr. 433, at page 440. In *Goods of Maddock*, L. R. 3 P. & D. 169, it was said to be "a rule that if a witness make any mark, with an intention thereby to subscribe the will, it will be sufficient." It must be taken from these decisions that subscription as applied to the witnessing of wills has been interpreted in England to mean the attachment to the instrument of any identifying writing with the purpose of identifying thereby the paper as the one signed by the testator and attested by the witness.

The same conclusion must be reached if the decisions are disregarded and the question is considered on principle. The purpose of the statute of wills, in the requirement for attestation and subscription, is that the testator at the time of the execution of his will shall be attended by impartial, disinterested and competent persons, so that he may declare his desire as to the disposition of his property freely, without coercion, and intelligently, without mental incapacity, and have his written act attested by these witnesses, and the paper by which he has expressed his testamentary wishes identified by these witnesses by their subscription, so that they may be able thereafter to testify that that identical paper is the one signed by the testator and attested by them. Any form of writing adopted by the witness and accomplishing that purpose is sufficient to satisfy the statute. Considered etymologically, the word "subscribe" includes any writing beneath the

instrument as well as the writing of one's own name. This mean-
ing also is recognized by the lexicographers.

In the case at bar there is no doubt about the facts. The wit-
ness Davenport actually wrote with his own hand. He wrote his
Christian name. Apparently then his mind wandered momenta-
rily, and without thought and automatically he finished by writing
the middle initial and surname of the witness who, an instant be-
fore, had signed his name in Mr. Davenport's presence. There is
no doubt that the instrument is identified by the handwriting of
the witness Davenport. That handwriting was put upon the paper
with the very intent of subscribing it as a witness. If he had de-
clared at that time that he was intentionally and intelligently writ-
ing "William H. Gould" as and for his mark or as his fictitious
name, his conduct would have brought him within the letter of
adjudged cases. The circumstances that his mind was a blank as
to the name written and that his hand and eye, without intelligent
direction, copied that which was near, do not rob the act of writing
beneath the other names of the legal effect of being an effectuation
of his dominant design. The regnant purpose of witnessing the
will permeated every part of his conduct in standing by, attesting
the signature of the testator, observing the subscription by each of
the other two witnesses, and using the pen himself in writing upon
the instrument. His mind was lost to the instant matter for the
very few seconds of time required in writing the middle initial and
last name. But even then the movement of hand and pen were not
suspended, but continued the writing under the ruling determina-
tion to subscribe the will. Although the particular effect produced
by this act was not the one intended, yet a name was subscribed.
Mr. Davenport put his pen to paper for the purpose of indicating
by an identifying mark that he had witnessed the signature of the
testator. The image as drawn fell short of the mental concept
and in that regard was incomplete. It nevertheless, by reason of
the handwriting, connected Mr. Davenport with the subscription,
and the fact that a middle initial and a name other than the one
intended to be written were unconsciously added to the word
"William" intentionally set down, would not and could not blot
out the subscription so far as it went. Had the design been to
make a single horizontal line, had the witness drawn that much
and then in removing the pen unconsciously destroyed the integ-

rity of the line, it could not reasonably be held that the witness had not subscribed. The case differs from instances where the witness failed to accomplish any part of the designed plan. The case is different from *Goods of Maddock,* L. R. 3 P. & D. 169, where a person wrote only his Christian name and by reason of physical weakness was unable to complete his signature and another witness was sent for.

Under all the circumstances there was a sufficient subscription of the will. To hold otherwise would put into the statute a nicety of preciseness that is not there.

We are aware of only two decisions in this country closely in point. *Estate of Walker,* 110 Cal. 387, appears to be in conflict with the conclusion here reached. But the governing statute in that case required the witness to "subscribe his name" and in the majority opinion emphasis is placed upon the words "his name" as requiring a subscription of the exact words used to distinguish the person subscribing. But there were three dissenting opinions to that result. A well reasoned Surrogate's decision in New York is in accord with our conclusion. *In re Jacobs' Will,* 132 N. Y. Supp. 481.

<div align="right">

*Decree of Probate Court affirmed.*