**JOHNSON–BROWN CO. v. DOMINEY PRODUCE CO.    (4 Div. 65.)**

(Supreme Court of Alabama.  Nov. 20, 1924. Rehearing Denied Jan. 22, 1925.)

**1. Evidence ☞472(1)—Question as to whether letter properly mailed would have reached witness properly excluded as calling for conclusion to be drawn by jury.**

Objection to question as to whether letter addressed to witness at a named post office with a two cent stamp on it and mailed would have reached him was properly sustained where witness stated that he got his mail at that post office; the question calling for a conclusion to be drawn by jury.

**2. Customs and usages ☞15(1)—Parol evidence of trade usages admissible to explain true meaning of contract.**

Evidence of local or general usages of trade and commerce is admissible to ascertain the true meaning of contracts, and to explain trade terms.

**3. Appeal and error ☞1058(2)—Error in excluding testimony substantially thereafter admitted harmless.**

Where contract of sale specified "usual terms," error in excluding testimony of witness explaining the term was harmless, where witness was afterwards permitted to state his understanding of the term at place where contract was negotiated.

**4. Evidence ☞441(9)—Parol evidence to show understanding as to cash payment intended, where sales contract provided for "usual terms," held inadmissible.**

Where a sale contract provided for "usual terms," evidence as to an understanding between the parties that payment was to be cash when loaded on track was inadmissible as tending to vary the contract which was complete as to terms, though subject to explanation as to the trade meaning of the words "usual terms."

**5. Appeal and error ☞1048(5) — Error in overruling objection to improper question not rendered harmless by witness' denial in view of testimony rebutting denial.**

On issue of buyer's right to recoup for seller's nondelivery, the erroneous overruling of question asked buyer's witness as to whether buyer agreed to pay cash where contract provided "usual terms" was not rendered harmless by witness' denial of agreement in view of buyer's evidence in rebuttal.

**6. Appeal and error ☞1050(2)—Admission of testimony remote from issues held harmless.**

On issue of buyer's right to recoup for seller's nondelivery, evidence as to purchases by buyer of other goods from a third person, though remote from the issues, held harmless.

**7. Appeal and error ☞1050(1)—Error in admission of testimony cured by subsequent admission without objection.**

Admission of incompetent testimony held harmless, where subsequently received without objection.

**8. Infants ☞55—Evidence as to minority of member of partnership inadmissible where partnership suing on contract.**

In action by partnership, one of whose members is not of full age, evidence as to such member's minority, in so far as it affected validity of contract, is incompetent where it was suing on contract, and hence could not assert its invalidity.

**9. Appeal and error ☞1050(1)—Sales ☞358(1)—On issue of buyer's right to recoup for seller's nondelivery evidence of general market condition competent, though inconsequential.**

On issue of buyer's right to recoup for seller's nondelivery of carload of peanuts, evidence that the peanut crop that season was the leading crop in that section, and that many tons were selling on a market regulated and controlled daily, *held* not incompetent, though inconsequential, and at any rate not harmful to buyer.

**10. Sales ☞358(1) — Evidence that first carload was shipped while senior member of seller's firm was not in county held immaterial on issue of buyer's right to recoup for nondelivery.**

On issue of buyer's right to recoup for seller's nondelivery of carload of peanuts, evidence that first carload was shipped while the senior member of firm was out of the county was immaterial.

**11. Trial ☞208—Refusal of instruction that there is no evidence of facts in issue held not error.**

Refusal of an instruction that there is no evidence of facts in issue *held* not error.

**12. Trial ☞244(3) — Requested instruction stressing part of evidence properly refused.**

On issue of buyer's right to recoup for seller's nondelivery, a requested instruction, that seller's telegram notifying plaintiff that cars had been placed elsewhere was not notice of seller's intention to not deliver, was properly refused as stressing a part of the evidence, without requiring jury to consider all evidence on point mentioned.

Appeal from Circuit Court, Dale County; J. S. Williams, Judge.

Action on the common counts by the Dominey Produce Company, a partnership, against the Johnson-Brown Company, a partnership. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The contract, the basis of the suit, is as follows:

"Order No. ――――.          Date 10/3, 1919.
"M. Dominey Produce Co., Ozark, sold to Johnson-Brown Co., at Albany, Ga.
"How Ship: Frt.
"Terms: Usual.  When within 15 days.
"Salesman: ――――.  Buyer: W. S.
"2 C/L No. 1 white Spanish peanuts at $140.-00 per ton.
"F. o. b. cars, basis Ozark, Ala., Frt. rate.
"Shipping instructions to be furnished by buyers.          Dominey Produce Co.
          "By R. E. Dominey."

Defendant's fourth plea is as follows:

"That, at the time this suit was brought, plaintiff was indebted to defendant in the sum of, to wit, $1,000, in that plaintiff contracted to sell defendant on, or about, the 3d day of October, 1919, two minimum cars of peanuts, aggregating 30 tons, and that plaintiff failed and refused to deliver 15 tons of said peanuts, within the time provided in said contract, and thereby damaged defendant in the said sum of $1,000, which defendant offers to recoup against the amount claimed in said complaint."

On examination of the witness Brown, defendant asked these questions:

"Now, I will ask what the words 'usual terms' mean in the peanut trade as stated and used in that contract?"

"I'll ask you what the words 'usual terms' mean and are understood to mean, between buyers and sellers of peanuts in the market, under a contract similar to that which you hold in your hand."

"What did the words 'usual terms' mean commonly among buyers and sellers of peanuts at and about the time that contract was entered into?"

"But you know that in the peanut market in Southeast Alabama, and in the territory where you have been buying and selling peanuts, and in Southeast Alabama, where Ozark, Ala., is located, that the words 'usual terms' mean bill of lading attached to draft for 90 per cent. of the invoice price?"

To each of these questions the plaintiff objected, and such objections were sustained by the court. This witness thereafter testified:

"The draft drawn by Dominey Produce Company on this car of peanuts was for 90 per cent., and then drew another draft for 10 per cent. and that was in accordance with the terms of the contract as I understand it. The 90 per cent. draft was drawn first, and the 10 per cent. draft was drawn afterward."

The court overruled defendant's objection to the following question propounded by plaintiff to the witness Wood: "On that same trip, and while you and Herbert Smith were making that trip, you went to Newton and bought a car from S. S. Deese & Sons, didn't you?" and denied defendant's motion to exclude the answer, "We bought a car." The witness Dominey was asked this question: "Your peanuts had gone out of Alabama at that time, hadn't they?" And over defendant's objection answered, "Yes, sir." Whereupon he was asked, "And had gone while you were out of the county?" Over further objection of defendant the witness answered, "Yes."

These charges were requested for defendant, the refusal of which is made the basis of assignments 19 and 20:

"The court charges the jury that there is no evidence in this case that defendants were to furnish bank guaranty of payment of plaintiff's draft on defendant for payment of the peanuts in question."

"The court charges the jury that the telegram of plaintiffs to defendants reading as follows: 'Waited until after twelve o'clock have placed cars elsewhere, Dominey Produce Co.,' is not notice to defendants of plaintiffs intention to not deliver the peanuts in question."

O. S. Lewis, of Dothan, for appellant.

It was proper to show the meaning of the terms used in the contract. 10 R. C. L. 1072. Evidence of the age of one of plaintiffs was inadmissible; also of the extent of the peanut crop in the community. Gilmer & Taylor v. City Council, 26 Ala. 665; Troy Lbr. Co. v. Boswell, 186 Ala. 411, 65 So. 141. Counsel argue other questions, but without citing additional authorities.

Sollie & Sollie and H. L. Martin, all of Ozark, for appellee.

A witness may not give his conclusion or opinion. Coster v. Thomason, 19 Ala. 717; Pollock v. Gantt, 69 Ala. 373, 44 Am. Rep. 519; 3 Mayfield's Dig. 477. Parol evidence is admissible to contradict the terms of a contract as to its consideration, unless it varies or contradicts its legal effect. McCullough v. Walton, 11 Ala. 492; Thompson v. Bell, 37 Ala. 438; Foster v. Bush, 104 Ala. 668, 16 So. 625; Hendon v. Morris, 110 Ala. 114, 20 So. 27; Booth v. Dexter, 118 Ala. 369, 24 So. 405. The question asked by plaintiff of witness Wood as to his agreement to pay cash for the peanuts called for legal testimony. Chambers v. Ringstaff, 69 Ala. 140; Moody v. A. G. S., 124 Ala. 195, 26 So. 952; Higgin v. T. C. I. Co., 183 Ala. 640, 62 So. 774; Mobile County v. Linch, 198 Ala. 57, 73 So. 423; Russell v. Garrett, 208 Ala. 92, 93 So. 711. Charges requested by defendant were refused without error. 1 Greenleaf on Evi. § 49; Griffin v. State, 76 Ala. 29; Knox v. Fair, 17 Ala. 503.

SAYRE, J. The parties to this action entered into a contract for the sale by appellee to appellant of two carloads of peanuts at a stipulated price, to be delivered f. o. b. cars at Ozark within 15 days, "terms usual." Appellee delivered one carload, but failed and refused to deliver the other. Appellee sued for the contract price of the carload delivered. Appellant, in agreement with special pleas pleaded, sought to recoup in damages by showing appellee's breach of the contract in the matter of the other. The real issue between the parties arose out of the question of recoupment. Appellee's contention was that by the contract of sale it was to be paid cash down as soon as the cars were loaded upon the track; appellant that "terms usual" in that territory and in the peanut trade meant that appellee was to draw for 90 per cent. of the contract price, bill of lading attached, the 10 per cent. balance to be retained until delivery at Albany, Ga., appellant's place of business, "to insure

weights"; and that appellee's true reason for refusing to ship the second carload was that, after shipment of the first and before expiry of the agreed time of shipment, the price of peanuts had advanced by as much as $30 a ton. Errors are assigned upon questions of evidence, and some charges given and refused.

[1] Appellee's witness Dominey would not say categorically whether he had received a certain letter written and duly mailed by appellant. The court sustained an objection to appellant's question: "A letter addressed to you at Ozark with a two-cent stamp on it and mailed would have reached you?" Witness resided at Ozark, and, this fact determined, the question called for a conclusion to be drawn from commonly known facts which the jury were as well qualified to draw as the witness, and, besides, the witness stated that he got his mail at Ozark.

[2, 3] Some of the rulings arose out of questions by which appellant sought to have its witness Brown say what "usual terms" in contracts of the sort meant in the territory in which both parties did business, and were unnecessarily narrow against appellant; the rule being that evidence of local or general usages of trade and commerce is admitted to ascertain the true meaning of contracts. Jones on Ev. § 457. The contract in this case was witnessed by a paper writing signed by appellee and delivered to appellant, and appellee's witness had testified without objection to the meaning of the terms thereof, "in the peanut trade." He testified, however, that he did not know the meaning of "terms usual." But it may be doubted that any substantial harm resulted to appellant from this ruling, for, in the end, the witness testified to his understanding of the meaning of the phrase *at Ozark*, where the contract was negotiated, and where, as we have seen, appellee did business.

[4] Over appellant's objection appellee was allowed to ask the witness Wood, appellant's agent in the purchase of the peanuts: "Didn't you tell him [Dominey who acted for appellee partnership] as an inducement to the purchase of the peanuts that when they were loaded upon the track, you would pay cash for them or that Johnson-Brown Company would?" Appellee would justify this ruling on two grounds: One, that it was competent to show the true consideration moving from appellant—inducement to the purchase, the question put it—and, the other, that the paper writing did not evidence the entire contract, and therefore appellee had the right to the question as necessary to show the full content of the contract. Appellee does not contend that the paper writing fails to show correctly the price to be paid for the peanuts. As to that, see Leftkovitz v. First Nat. Bank, 152 Ala.

529, 44 So. 613. Indeed, appellee put the paper in evidence as showing the price agreed upon, and had judgment accordingly. The difference between the parties, a difference of importance only as bearing upon the issue of recoupment vel non, was about terms of payment, meaning time or times of payment. As to that the contract was complete, though it needed explanation. It was complete because it provided for payment on the "usual terms"—"terms usual" of the trade; but "usual" needed explanation. The meaning of "usual" established, according to the usage of the peanut trade—there was no indication that it meant anything other—the contract was complete in every respect, and, there being no claim of fraud or mistake, brought appellee's evidence fairly within the rule that, when the parties by implication, if not expressly, have agreed that in the event of a misunderstanding the document shall be taken as the best evidence of their intention, its contents may not be contradicted, altered, added to, or varied by oral evidence. Jones on Ev. § 434 et seq.

[5] The purpose and probative tendency of this question and answer were to show, not that when explained by trade usage "terms usual" meant cash down, but to show that the parties entered into a contract for the payment of the price cash down, the words of the written contract, properly explained, to the contrary, notwithstanding. Nor can the suggestion of error without injury be allowed to prevail. True, the witness denied that he had told Dominey that he—meaning his employer, appellant—would pay cash for the peanuts when loaded on the track; but the issue thus raised was precisely the issue appellant sought to keep out of the case and was, indeed, the only issue on which appellee could have prevailed, and, afterwards, appellee made the most of it, as its evidence in rebuttal shows.

[6] We do not see that any harm was done by the rulings made the basis of assignments of error 7 and 8. The fact that witness Wood bought a third carload of peanuts for appellant from a different vendor on the same trip had only the remotest, if any, connection with the facts in issue before the jury.

[7, 8] So likewise the proof that Dowling Dominey, a member of appellee partnership, who was present at the negotiation of the contract, had not come of full age, had hardly any legitimate place in the record. Appellee was suing on the contract, and was not in a position to gainsay its validity, if that was the purpose of the question. But, afterwards, it came in without objection.

[9, 10] That the peanut crop was, that season, the leading crop of southeast Alabama, southwest Georgia, and Dale county, that many tons were selling on a market regulated and controlled daily, while of no particu-

lar consequence, was not an improper subject of proof as tending to show the probable interest the parties had taken in the general subject of which the transaction in dispute was a part. At any rate, we do not see that it hurt appellant's cause. That the first carload had been shipped while the elder Dominey was out of the county was immaterial.

[11, 12] The charge made the subject of the nineteenth assignment of error was refused without error. The court could not be required to charge that there was no evidence of facts in issue. Nor did the court err in refusing the charge set out in assignment 20. The charge laid stress on a part of the evidence without noting the duty of the jury to consider all the evidence on the point mentioned.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.