53 So.2d 386

### HUGHES v. MERCHANTS NAT. BANK OF MOBILE.
I Div. 433.

Supreme Court of Alabama.
May 17, 1951.

Rehearing Denied June 28, 1951.

Hubert M. Hall, Bay Minette, and Ray & Giles, Birmingham, for appellant.

Alvin McConnell, Mobile, for appellee.

SIMPSON, Justice.

This is a will contest by appellant, the only heir at law of testatrix, Hattie T. Hughes, who owned property in and was a resident of Mobile, Alabama, at the time of her death. Theo Little, a niece, was named as executrix and was one of the beneficiaries under the will. She propounded the instrument for probate, but died pending the proceedings and the cause was revived in the name of appellee, as her administrator. The instrument propounded for probate as the last will and testament of Mrs. Hughes reads as follows:

"Theo Little, Executrix & Hunt C. Hughes, Executor, without Bond.

"A statement made by Mrs. Hattie Hughes & witnessed by Mrs. Lucile Williamson, R. N. *Witness*; Mrs. Beatrice Smith, R. N. *Witness*.

"I want Theo to have One Thousand ($1000.00),

"I want Berta to have One Thousand ($1000.00),

"I want Claudia to have One Thousand ($1000.00),

"I want Harriet to have One Thousand ($1000.00),

"I want Dodie Jones to have 100.00 (hundred),

"I want Mary Kindley to have 100.00 (hundred),

"I want Harriet to have diamond necklace & Round Pin; later to go to little Hughes.

"I want Dodie to have Pin with six diamonds.

"I want all my bills paid.

"I want Hunts wife to have Cameo Pin with Pearls.

"I want Josephine to have Garnet Pin.

"I want Kathleen Yeager to have Gold Bracelet.

"I want Theo to have everything in her house she wants.

"Hunt to have the rest.

"Surlie Taylor $100.00 (hundred).

"June 3, 1947.

"(SGD) Hattie T. Hughes."

The primary inquiry is whether the will was duly executed and involves a construction of that portion of § 24, Title 61, Code 1940, of our statute which requires that for such an instrument to be effectual as a will it must be "attested by at least two witnesses, who must *subscribe* their names thereto in the presence of the testator." (Emphasis supplied.)

The two subscribing witnesses, Mrs. Williamson and Mrs. Smith, as appears, rather than signing their names at the end of the instrument, attested it toward the beginning. The evidence for proponent tended to show that Mrs. Hughes did request these two ladies to witness the instrument and that they each signed their names, as indicated, in the presence of each other and in the presence of Mrs. Hughes, after Mrs. Hughes had signed her name in their presence, with appropriate words indicating an intention that it be her will.

It is argued by appellant that because the attesting witnesses did not sign at the conclusion or end of the instrument, it was not subscribed pursuant to the statute and was therefore not effectual as the last will and testament of the signatory. We have given this argument serious consideration and have engaged in considerable research, but, like the trial court, are convinced the statute is not subject to that construction. There are statutes in some states which require that the testator and the attesting witnesses must sign or subscribe at the end of the will, 57 Am.Jur. 256, § 348; 10 A.L.R. 429; In re Walker's Estate, 110 Cal. 387, 42 P. 815, 1082, 30 L.R.A. 460, 52 Am.St.Rep. 104, but ours does not so provide.

This section of our statute of wills, like its original predecessor embodied in the Code of 1852 (and the intervening

ones) relating to the subscription of testamentary documents by attesting witnesses, is a substantial counterpart or transcript of that part of the fifth section of the English statute, 29 Charles II, Chapter 3, § 5, which authorized persons of the age of twenty-one years to make devises (then of real estate only) by last will and testament in writing, *"provided,* that such last will and testament is signed by the testator or testatrix, or by some person in his or her presence, and by his or her direction, and attested by three or more respectable witnesses, *subscribing* their names thereto in the presence of such devisor." Barnewall v. Murrell, 108 Ala. 366, 376, 18 So. 831, 836; Armstrong's Ex'r v. Armstrong's Heirs, 29 Ala. 538. The considered section of our will statute having come from the English statute, this court has consistently adopted the construction placed on the mother statute. As was said in Armstrong's case: " * * * the construction which had been put upon that part of the British statute, and settled as its true construction, by the British decisions before the adoption of our statute, ought to be regarded as the construction which our legislature intended to be put upon that part of our statute now under consideration. *We shall adopt and follow that construction."* 29 Ala. 540. (Emphasis supplied.) The principle was reasserted by Chief Justice Brickell in Barnewall v. Murrell, supra, 108 Ala. 377, 18 So. 831. Being without authority from our own court, therefore, we think it sound to adhere to this salutary rule and will look to the decisions of the English courts for guiding precedent.

The English courts in interpreting the quoted provision of their wills act held a signing at the end or foot of the instrument was not necessary, the requirement being met by the signature of the witnesses on any part of the will, with the intention of attesting it. Walker's Estate, supra; Roberts v. Phillips, 4 El.&Bl. 450, 119 Eng. Reprint 162; Braddock's Goods, L.R. 1 Prob.Div. (Eng.) 433; Horaford's Goods, L.R. 3 Prob.&Div. (Eng.) 211, 44 L.J. Prob.N.S. 9, 31 L.T.N.S. 553, 23 Week. Rep. (Eng.) 734; Ellison's Goods, 2 Ir.R. 480; Streatley's Goods, L.R.P. (Eng.) 172, 39 Week.Rep. 432; Harris' Goods, 23 Week.Rep. (Eng.) 734.

The leading English case which first considered the question is Roberts v. Phillips, supra, where one of the attesting witnesses signed his name in the body of the instrument, the other two at the end, three subscribing witnesses then being the statutory requirement. It was held, Lord Campbell, C. J., writing, that the will was properly attested. It was there said: " * * * The mere requisition that the will shall be *subscribed* by the witnesses, we think, is complied with, by the witnesses who saw it executed by the testator immediately signing their names on any part of it at his request, with the intention of attesting it. * * *" 4 El.& Bl., 458.

This court as early as Riley v. Riley, 36 Ala. 496, 502, seemed to have intimated a like view where it quoted with approval the following definition of Sir H. Jenner Fust: " 'The witnesses are to *subscribe*; in other words, they are required, I conceive, to do an act which shall be apparent on the face of the will.' To *subscribe*, is defined to be, *'to set one's hand to a writing,'* (Pridgen v. Pridgen's Heirs, 35 N.C. [259], 260,) and this the act requires the witnesses to do."

Also, in the much later case of Elston v. Price, 210 Ala. 579, 98 So. 573, Gardner, J., later Chief Justice, speaking for this court, quoted with approval the New Hampshire case of Tilton v. Daniels, 79 N.H. 368, 109 A. 145, 8 A.L.R. 1073, and concluded with the result that "The essential thing is that 'by the signature [the witness] meant to affirm that the deceased executed the will in his presence'." 210 Ala. 581, 98 So. 574. The opinion also approvingly quoted from the Massachusetts case of Smith v. Buffum, 226 Mass. 400, 115 N.E. 669, L.R.A.1917D, 894, where it was pointed out that the English construction of the statute of wills should be the proper guide for interpretation.

The latest case from our court treating of this particular provision is Johnston v. King, 250 Ala. 571, 35 So.2d 202, holding that a will is properly subscribed by the attesting witnesses even though the subscription be on a different sheet of paper, just so the sheets are so connected and coherent in meaning and by an adaptation of the several parts as to be a testamentary whole. Though this case is no direct authority for decision here, its rationale is strongly persuasive of the conclusion we reach that to "subscribe" as used in the statute was not intended to be used in its literal, primary sense, but in its broader meaning to attest by signing the witness' name as an act done with the intention of his witnessing the execution of the will. This is easily deducible from the holding in that case to the effect that the statutory requirement that the attesting witnesses "must subscribe their names thereto" was complied with where a notary public in Germany filled in a "protocol" (separate instrument of attestation) on an official printed form referring to the testatrix' unwitnessed will, the protocol then being signed by the testatrix and the three attesting witnesses (and the notary public) in each other's presence and attached by a cord to the will and placed in a sealed testament envelope. We might add this decision also is consonant with English precedent. In re Goods of Almosnino, 6 Jur.N.S. (1860) 302.

We hold, then, that a compliance with § 24 of our will statute does not require that the attesting witnesses sign their names at the foot or end of the will, but that the proviso is met by the attesting witnesses affixing their respective signatures on any part of the will with the intention of attesting it, the essential thing being that by their signatures they intended to affirm that the testator executed the will in their presence. The instrument under consideration was, therefore, admissible in evidence as the last will and testament of Hattie T. Hughes, resulting that there was no error either in its introduction, in the giving of the proponent's several written charges to that legal effect, or in the refusal of the several requested charges of contestant seeking to hypothesize the contrary theory.

Cogent argument urges that Bunch v. Garner, 208 Ala. 271, 94 So. 114, opinion by Miller, J., is sustaining authority to the contrary, but we cannot agree. There the section of our statute of frauds was under consideration providing that for the contract to be enforceable it or some note or memorandum thereof expressing the consideration must be in writing and "subscribed by the party to be charged therewith." Code 1940, Tit. 20, § 3. The court observed that from a construction of the entire contract it was not subscribed in conformity with the statute by the party to be charged with the intention of so binding him; that its phraseology indicated the names as used in the contract were not intended as a final signature, to wit: "* * * This phrase, 'the undersigned' as used therein, indicates the names as used in the contract were not intended as a final signature, but that the instrument was to be signed under it * * *," indicating that the parties "intended that the instrument was to be further executed * * *" 208 Ala. 273, 94 So. 116. There may be some general expressions and quotation of authority in the case which might lend color to the contention as advanced by appellant, but that case is not considered as controlling the question here presented. In the face of the clear construction impelled by our other cases, as well as sound reasoning, we think the conclusion we have reached to be the only proper one and it is so held.

The foregoing disposes of the crucial question in the case. There are, however, other propositions of law raised by the several assignments of error which require some treatment. The grounds of contest were (1) lack of due execution of the will, above disposed of; (2) lack of testamentary capacity of the testatrix; and (3) undue influence exerted by Mrs. Little. The remaining assignments of error relate to rulings on matters of evidence and to the giving of certain written charges for the proponent and the refusal of certain others requested by the contestant.

Error to reverse is sought to be predicated on the ruling of the court in permitting Mrs. Smith, one of the attesting witnesses, to answer the question propounded to her by counsel for proponent, "Was it your understanding there at that time, Mrs. Smith, that this document or statement or whatever it was you call it, was to take effect at the time of the death of Mrs. Hughes?" the witness answering, "Yes." True, a nonexpert witness may not give his or her opinion of the legal effect of a document, Alabama Great Southern Ry. Co. v. Flinn, 199 Ala. 177, 74 So. 246; Gaston v. McDonald, 220 Ala. 155, 124 So. 208; Henderson v. Brunson, 141 Ala. 674, 37 So. 549, but we are not so sure that such was the effect of this testimony; it may have been intended as a shorthand statement of what Mrs. Hughes was saying about the document, and the burden is on the appellant to show error. Also, a careful reading of the entire testimony of Mrs. Smith indicates to our minds that the contestant invited such an inquiry and it was merely in response to previous cross-examination of the witness, where counsel for contestant defined to the witness the constituents of a gift *causa mortis* and then inquired, "And you don't even know whether it [meaning the instrument] was a gift causa mortis or a gift at this time or whether it was to go to them after death, do you?" the witness answering, "No." Inviting such error, if indeed it be, the contestant cannot now take advantage of it.

The same witness was also allowed, over contestant's objection and exception, to give her opinion as to the soundness of mind of Mrs. Hughes without first showing prior opportunity for observation, etc. The ruling was proper. Attesting witnesses to a will are competent to give an opinion as to the mental capacity of the testator when the will was made, without other qualification as to association with the decedent and without stating facts on which the conclusion is based. Lowery v. Lowery, 225 Ala. 376, 143 So. 556; Shirley v. Ezell, 180 Ala. 352, 60 So. 905.

One other assignment of error with reference to the admission of evidence.

On cross-examination of appellant's wife, proponent undertook to show that upon their return trip to Mobile after Mrs. Hughes' death and before the funeral, appellant went to the bank and there transacted business involving the funds of Mrs. Hughes which had theretofore been deposited in a joint survivorship account. Without treating of the admissibility vel non of such evidence, it is sufficient to say that its admission cannot be made a predicate for reversal. This same evidence came in later by the testimony of appellant himself and was therefore without injury to him. Johnson-Brown Co. v. Dominey Produce Co., 212 Ala. 377, 102 So. 606; Simmons v. Cochran, 252 Ala. 461, 41 So.2d 579.

Giving of proponent's written charge 5 is pressed on us as error to reverse because of that portion which instructed the jury "that when Mrs. Lucile Williamson and Mrs. Beatrice Smith wrote their respective names as witnesses to the will etc.", the argument being that the charge invaded the province of the jury in assuming that the instrument was a will and that the witnesses did in fact write their names as witnesses to a will. Appellant concedes, however, that a charge somewhat similar, charge 1, in Reynolds v. Massey, 219 Ala. 265, 122 So. 29, was approved by the majority of the court as a correct proposition of law. We think at most the charge is merely misleading, since it appears from the context of the charge itself that the inquiry submitted to the jury was whether or not the instrument had been executed in accordance with the statute as a will. We do not think the jury could have assumed the court was telling them that the instrument was a will, since that was the main issue in the case, and the oral charge of the court and several given charges requested by the contestant accurately posed this issue. If there was any misleading tendency, the way was open to the opposing party to neutralize its effect by an explanatory charge. McCalley v. Penney, 191 Ala.

369, 67 So. 696; Emergency Aid Life Ass'n v. Gamble, 34 Ala.App. 377, 40 So. 2d 887, certiorari denied 252 Ala. 282, 40 So.2d 888.

Error is also sought to be predicated on the giving of proponent's charge 12, which, in instructing with reference to the presumption of law as to sanity and the burden of showing lack of testamentary capacity to the satisfaction of the jury, omitted "reasonable." A similar charge was approved in Eastis v. Montgomery, 95 Ala. 486, 11 So. 204, Chief Justice McClellan writing, whereas it seems to have been disapproved later by the younger McClellan in Johnston v. Johnston, 174 Ala. 220, 57 So. 450, where it was observed: " * * * one alternative, exacted, as a condition to the shifting of the burden of proof, according to the doctrine just stated, that the contestants show to the jury's *satisfaction* that Johnston was, prior to the execution of the paper propounded, under the disability of habitual, fixed insanity. The degree of proof required by the instruction was too great. Reasonable satisfaction is the degree the law requires. * * *" 174 Ala. 227, 57 So. 453.

But it is obvious that the charge really was not one relating to the degree of proof required, but sought to instruct the jury with reference to the presumption of law as to sanity; and while the omission of the word "reasonable" might have rendered the charge inaccurate as regards the degree of proof required, we feel certain the giving of the charge resulted in no prejudice to the defendant on account of the full, lucid and specific oral charge of the court, as well as the contestant's given charge 8. Such instructions were replete with the specific admonition that the only burden the contestant carried on the issue was proof to the jury's reasonable satisfaction. Indeed, charge 12 in verbatim, with the added word "reasonable," was embodied in the oral charge. We can properly invoke the rule of error without injury to avert a reversal here. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

There was likewise no error to reverse in giving proponent's charge 94, since it is susceptible of the construction that as a matter of law the name which the maker might give to an instrument did not determine its character, but that the intention of the author would be the controlling factor. Walker v. Jones, 23 Ala. 448. The charge at most only had a tendency to mislead and could have been corrected by an explanatory charge, had the contestant so desired.

Charge 28 was properly refused as argumentative. Alabama Consol. Coal & Iron Co. v. Heald, 168 Ala. 626, 53 So. 162; Louisville & N. R. Co. v. Young, 168 Ala. 551, 53 So. 213; Louisville & N. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001.

For like reason charge 22 B was refused without error. Miller v. Whittington, 202 Ala. 406(14), 80 So. 499; Alabama Consol. Coal & Iron Co. v. Heald, supra; Louisville & N. R. Co. v. Young, supra; Louisville & N. R. Co. v. Holland, supra.

Contestant's requested charge 21 was properly refused in that it pretermits that for the testimony of the witnesses to be disregarded, the witness must have "wilfully or corruptly" sworn falsely to a material fact, the quoted words being omitted from the charge. Steele-Smith Dry Goods Co. v. Blythe, 208 Ala. 288(3), 94 So. 281.

The final assignment relates to an episode which took place during the direct examination of one of contestant's witnesses, when his counsel, after the witness had testified to the lack of affection testatrix had for her son due to the bad company he kept, endeavored to show that among contestant's associates was the judge presiding at the trial. The court at this juncture said:

"Mr. Duggan, I don't think it is proper for you to bring the court into a question of that kind.

"Mr. Duggan: Your Honor please, I believe you are right about that.

"The Court: I think we have had too much of that. I think it is highly improper,

and I want to tell you now that I never want it to occur again in my court room. I think it borders so close on contempt that the court should take some action in the matter.

"Mr. Duggan: If the Court please, if the Court feels that way about it, I want to offer my sincere apology to you, because it was not meant as any reflection.

"The Court: As long as you practice in my court, I never want you to take advantage of the court like that again.

"Mr. Duggan: Your Honor, I did not understand that I was injuring your feelings.

"The Court: I think it was done purposely, and simply for the purpose of endeavoring to bolster up your case."

We are not able to say that the remarks of the judge were so highly prejudicial as to influence the jury; but be that as it may, it was not error to reverse, because such interrogation was entirely improper and the contestant provoked the reprimand himself. Having done so, he is in no position to now take advantage of it.

We have given studious consideration to the voluminous record comprising over 700 transcript pages and many exhibits, in connection with the brief and argument of able counsel, but are constrained to hold that no error intervened pending trial which would authorize a reversal.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.