336 So.2d 1091 (1976)
Timothy P. CRUMP et al.
v.
GEER BROTHERS, INC., a corp.
SC 1395.
Supreme Court of Alabama.
August 6, 1976.
Rehearing Denied September 3, 1976.
*1092 Jones, McEachin, Ormond & Fulton, Tuscaloosa, for appellants.
Hugh W. Roberts, Jr., Tuscaloosa, for appellee.
FAULKNER, Justice.
This is an appeal from a jury verdict, and judgment of the Circuit Court of Tuscaloosa County, awarding Geer $54,000 damages for negligence of an insurance agent by *1093 procuring inadequate coverage of insurance against loss or injury, by fire, and other perils. We affirm.
Geer Brothers, Inc. is a business engaged in selling campers and other recreational vehicles. Crump, an insurance agent, visited Geer several times with intent to sell it insurance. Geer claims that on one of these visits, August 1, 1973, an agreement was reached for Crump to provide "complete and adequate" insurance for the business. No letter, policy, or binder put this into effect. On February 18, 1974, however, Geer was given a "summary of proposed coverage" with coverage of $69,000 for fire and allied perils. This was later increased to $150,000. On May 2, fire destroyed one of Geer's buildings. Geer claimed that the building was worth $10,000; the inventory therein, $90,000. Crump asserts that even though the fire insurance coverage was increased from $69,000 to $150,000, the destroyed building remained insured for only $10,000, and its contents for $20,000. The other $120,000 of fire insurance covered the other buildings on the property, and their contents.
At the trial, Geer contended that Crump knew of the seasonal nature of the business, and its fluctuating inventory; that once Crump had agreed to procure insurance, he was under a duty to use reasonable skill in doing so, by being sure Geer's inventory was adequately covered. Crump, on the other hand, contends there was no agreement reached between him and Geer on August 1, 1973. He says the "summary of proposed coverage" dated February 18, 1974, is unambiguous and the sole "expositor" of any agreement between the parties. Furthermore, he contends the evidence is insufficient to support the jury's finding an agreement to procure "complete and adequate" insurance. Crump also says that the trial court admitted inadmissible evidence; the opposing counsel engaged in improper argument by suggesting to the jury to put themselves in the shoes of Geer; that the issue of personal liability insurance was injected into the trial, to the prejudice of Crump. Finally, he contends that the measure of damages was erroneous because a mark-up was added to the cost of goods in computing the value of the destroyed inventory.

I
This court stated in Timmerman Ins. Agency, Inc. v. Miller, 285 Ala. 82, 229 So.2d 475 (1969):
". . . when an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom."
Here the agent procured insurance, but the questions are, did he procure "complete and adequate" coverage, as alleged by Geer, and did he agree to procure the insurance on August 1, 1973.
The evidence is conflicting about when an agreement to procure insurance was reached. But the evidence is clear that insurance was procured. It appears that there just was not enough. "Complete and adequate" coverage, then, appears to be the principal bone of contention.
Mr. Geer testified that several discussions with Crump were had concerning the necessity of adequate insurance. Crump was advised by Geer of the seasonable nature of the business, and the fluctuating inventory. Crump had access to the financial records of the business, and he examined the Geer warehouses. To show that he relied on the skill of the agent, Mr. Geer testified:
"Well, I did not put it in so many words as to knew (sic) exactly what I had, because I did not research each individual item, and go into great lengths. I explained to Mr. Crump that I was not an insurance expert, that I was sort of at his mercyhe could mess me up, he could charge me extra money, he could waste my moneyhe said `I will not do that;' he said, `I will write you the right insurance,' and these kind of things. I did not question so many of his details. I did not know what questions to ask him."
*1094 Crump, on the other hand, contends that Geer knew how much coverage he had; that he had explained the coverage to Geer, and that the insurance contract was unambiguous. He testified that after the fire, he told Geer he should be pleased that the coverage on the burned building had been increased to $30,000. Geer testified he agreed that $10,000 was sufficient for the building, but inventories fluctuated rapidly, and $20,000 was insufficient for the contents. Geer's evidence tended to show that in his dealings with Crump he was under the impression he had $100,000 coverage on inventory and warehouse.
To reverse the trial court, we would have to be convinced that the evidence was insufficient to support the verdict. Moreover, in view of the trial court's denying a motion for new trial, the presumption of the jury verdict is strengthened. From a review of the evidence, we cannot hold that the trial court abused his discretion by not granting a new trial. The rule announced in Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738 (1890) provides that:
". . . the decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust."
* * * * * *
"[The trial judge] has heard and seen the witnesses testify, observed their tone and demeanor, and noticed their candor, or convenient failure of memory, to avoid impeachment, or for other improper purpose. The appellate court, possessing none of these aids and advantages, and receiving the evidence on paper only, is less qualified to determine what evidence is unworthy of belief, or what weight should be given to that which has been rejected by the jury, and may give undue weight to the testimony of some of the witnesses."

II
Crump alleges the trial judge erred by overruling his objections to questions propounded to Geer. He states that they called for a conclusion of the witness, conjecture, and invaded the province of the jury.
The questions are:
"If you had been on the reporting form, or if you had been onwell, how much would the coverage have been in May of 1974, had you been on a reporting form basis?"
* * * * * *
"O.K. Well, was it your understanding, from your dealings with Mr. Crump, that you had more than $20,000 coverage on your inventory that was lost."
* * * * * *
"Were you led to believe by your negotiations with Mr. Crump, that on the warehouse that burned and the contents, that you had increased your coverage over what Gurley Barber and Harris had"
* * * * * *
"All right, sir. Were you led to believe from the negotiations with Mr. Crump, that the coverage that would be on the inventory and the building that burned, would be equal to what was in the building at the time of the fire?"
* * * * * *
"Was it your understanding from your dealings with Mr. Crump, and in your negotiations with Mr. Crump were you led to believe, that you had $100,000 on the premises that was destroyed?"
* * * * * *
"Is it understood from your negotiations with Mr. Crump, that that included the fire coverage?"
* * * * * *

*1095 "In your negotiations and dealing with Mr. Crump, were you under the impression that he was suggesting that you would have a $100,000 on that location?"
This court stated in Mobile, J. & K.C.R. R. Co. v. Hawkins, 163 Ala. 565, 51 So. 37 (1909) that:
"A witness may state a conclusion of fact; he is not required to state every fact separately from every other fact; he may state facts either separately or collectively. It is conclusions of law that he may not attempt to state; nor will he be allowed to draw a conclusion, or to state a conclusion which is to be drawn from several other factsthat would be the province of the jury; but it is not only permissible for a witness to sometimes state a conclusion as to a fact, but often absolutely necessary that he do so, if he testify at all relative to the fact. The rule prohibits merely the drawing or stating of conclusions of law, which are questions for the court, and of certain conclusions of fact which, under the issues and the evidence, are exclusively questions for the jury, and to be determined from all the other facts or evidence in the case. These conclusions of fact are denominated by our court `shorthand rendering of facts,' to distinguish them from mere gratuitous opinions, motives, and conjectures of the witness."
We hold that the trial court did not err by overruling objections to the questions. It is true that a non-expert witness may not give his opinion on the legal effect of a legal document, but that is not the effect here. The effect of Geer's testimony was a shorthand statement of the facts about the agreement to procure insurance. Cf. Hughes v. Merchants Nat. Bank of Mobile, 256 Ala. 88, 53 So.2d 386 (1951).

III
Crump alleges error when the trial court overruled his objection to the following questions propounded to him by Geer's counsel:
". . . And Mr. Crump, I am talking about the conversation that they started, that they opened the door on: Didn't you say `I am personally covered with insurance to cover my errors' and `Didn't you tell them about insurance that you personally had to cover any errors?"
The trial court overruled Crump's motion for mistrial. The questions were also included in Crump's motion for new trial. The questions to the witness leading to the objections are cataloged as follows:
"Q. All right, sir. Now, the conversation you had with Mr. Geer, and you inferred that: `wasn't it fortunate that we raised the coverage on the premises?'
"A. Yes, sir.
"Q. You never did raise the coverage on the inventory in the burned building, did you?
"A. No, sir. Mr. Geer had carried Fifteen Thousand Dollars prior to August
"Q. Excuse me, sir, but didn't you also Didn't he say, `Well, Tim, we have got a Hundred Thousand Dollars:' Did he mention that to you, in coverage?
"A. Yes, sir.
"Q. All right, sir. And didn't he act very much surprised when he found out, when you told him he did not have a Hundred Thousand Dollars coverage?
"A. Yes, sir, he was surprised.
"Q. And didn't, Mr. Crump, right there on the occasion of the fire, you said, `Aaron, if you think that you had a Hundred Thousand Dollars insurance, and should have had a Hundred Thousand Dollars insurance, and that I was supposed to afford you with a Hundred Thousand Dollars coverage: go ahead and file your suit.'? Or, words to that effect?
"A. I might have said words to that effectI very probably did.
"Q. And didn't you say alsoAnd, Mr. Crump, I am talking about the conversation that they started, that they opened the door on: Didn't you say, `I am *1096 personally covered with insurance to cover my errors.'?
"MR. McEACHIN: We object to that. The question calls for highly prejudicial evidence which is irrelevant to the issues and designed to impress upon the jury that Defendants were covered by insurance and the evidence would create an atmosphere of prejudice against the Defendants and is highly prejudicial and irrelevant.
"THE COURT: I'll overrule.
"MR. ROBERTS: Didn't you tell them about insurance that you personally had to cover any errors?
"THE WITNESS: I
"MR. McEACHIN: We object, and at this time move for a mistrial. The question calls for highly prejudicial evidence which is irrelevant to the issues and designed to impress upon the jury that Defendants were covered by insurance and the evidence would create an atmosphere of prejudice against the Defendants and is highly prejudicial and irrelevant.
"THE COURT: Overrule your motion for a mistrial, and also your objection.
"THE WITNESS: I said that people did make mistakes, and this wasI told them that people did make mistakes, that I did not feel that I had made one, but
"A. Did you mention to him that you had
"THE COURT: Just a minute, now: Don't mention anything else about coverage on him."
Geer contends that by propounding the question about insurance to Crump he was bringing out the remainder of the conversation between them. When part of a conversation is put into evidence, the opposing party may rightfully call for the whole conversation or all that was said in connection with that statement. Gibson v. State, 91 Ala. 64, 9 So. 171 (1890). Moreover, a defendant's mentioning his liability insurance is not inadmissible if it is associated with or interwoven with another part of his statement admitting fault, so as to be inseparable. Pittman v. Calhoun, 233 Ala. 450, 172 So. 263 (1937); Smith v. Baggett, 218 Ala. 227, 118 So. 283 (1928).
In Hunt v. Ward, 262 Ala. 379, 79 So.2d 20 (1955), this court said:
"`"It is unquestionably well settled that proof that a defendant had indemnity insurance is not admissible as an independent fact, but we have had cases where it is (admissible) when collateral to other material facts or so associated with or interwoven as to be inseparable that it becomes admissible and can only be eradicated or neutralized as bearing upon the defendant's liability by a limitation upon the effect of such evidence."'"
In this case, there were two questions propounded to the witness on the subject of liability coverage. They were asked under color of right or show of right to do so. We opine that a mistrial was not warranted. See Burnett v. Bledsoe, 276 Ala. 139, 159 So.2d 841 (1964). We observe that the trial court admonished counsel not to mention coverage again, after having ruled on objections, and the motion for mistrial.

IV
Crump objected to testimony of Geer's witness, Marion Posey, concerning damages. Posey was in business with Geer. His background was in accounting, and he was called as an expert in that field. Geer says an accounting expert was necessary to explain to the court and jury the complicated procedures involved in extrapolating the market value of the merchandise stored in the warehouse destroyed by fire. Posey testified he was familiar with the stored merchandise, had participated in their inventory, and was familiar with the accounting procedures. He was permitted to testify about the cost of the merchandise, and a 27.9% mark-up to the cost. Crump objected to this testimony.
As a general rule, the measure of damages for injury to property is the difference between the reasonable market value before and after the injury (market value may be defined as the price that a willing *1097 seller would sell, and a willing buyer would buy, neither being compelled to sell or buy). However, evidence of the amount required to make necessary repairs to a damaged automobile is a factor which a jury was authorized to consider in arriving at the true measure of damages. Arrick v. Fanning, 35 Ala.App. 409, 47 So.2d 708 (1950). In Southern Hardware Supply Co. v. Standard Equipment Co., 158 Ala. 596, 48 So. 357 (1909), this court said, "The general rule as to the measure of damages for property destroyed . . . is the market value of same at the time of the injury or destruction, and the interest."
Posey, having knowledge of the merchandise stored, and the price at which it was sold, was competent to give his opinion as to its value. Sussex Fire Ins. Co. v. Barton, 225 Ala. 570, 144 So. 439 (1932). Mark-up, when added to cost, results in selling price. If Posey was competent to testify as to "price sold," it follows he could testify what the mark-up was, when he had already testified as to the cost of the merchandise. The weight given this testimony was for the jury.Sussex.

V
During the summation to the jury, Geer's counsel said,
"Now, I cannot ask you by law, to put yourselves in the position of this man (indicating): But I can ask you to exercise your good judgment . . .
"But I can ask you to exercise your good judgment, and put yourself in a position of an insured, who has presented this item right here (indicating), or any of these other summaries."
We are of the opinion that if there was error, it was error without injury. In Hayles v. Jeter, 279 Ala. 283, 184 So.2d 363 (1966), counsel for plaintiff stated, "`I ask you, gentlemen, to put yourself in Plaintiff's place . . .'"
This court said:
"We do not say such argument would be proper. We do not, however, have before us enough of the argument to say that the bare invitation constituted such a forbidden appeal to the sympathy of the jurors as to prejudice defendant to the extent that this judgment must be reversed.
"With respect to remarks of counsel, much discretion is allowed the trial court. . . We are not persuaded that reversible error has been shown."
The trial court instructed the jury that the statement was not evidence. He said:
"Well, I overrule, and I instruct the jury that everything the lawyers say is just argument: It is not in evidence, and that is not to be taken as evidence. That is just argumenttheir argument of the case."
This should have cured any injurious effect the argument may have had.

VI
Finally, Crump contends the trial court erred by denying his motions for a directed verdict, and judgment notwithstanding the verdict. We hold the trial court did not err. A critique of Rule 50 A.R.C.P. was given by this court in Loeb and Co., Inc. v. Martin, 295 Ala. 262, 327 So.2d 711 (1976). There we discussed the Reasonable Man Test, and the scintilla evidence rule, and reversed the granting of a motion for directed verdict. Here, we apply these rules, and hold that the denial of the motions was proper.
AFFIRMED.
HEFLIN, C. J., and BLOODWORTH and EMBRY, JJ., concur.
ALMON, J., concurs specially.
ALMON, Justice (concurring specially):
I concur specially in the majority opinion, feeling constrained to note my reservation on the measure of damages. If appellant had adequately insured the appellee, then under the policy the appellee would have been entitled to "actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality . . . without *1098 compensation for loss resulting from interruption of business or manufacture."
Under the charge and evidence submitted to the jury, damages were to be the difference between the reasonable market value before and after the fire, which under the circumstances of this case included profit. Appellants made no objection to the court's oral charge on this point. Consequently, the issue is not before us. Nevertheless, I think a brief comment is in order.
"As a general rule the liability of the agent with respect to a loss, by reason of his breach of duty, is that which would have fallen on the company had the insurance been properly effected, together with such other damages as proximately result from the breach, and less the amount of unpaid premiums of cost of the insurance." 44 C.J.S. Insurance § 172.